26 C.C.P.A. (Patents)
## BREESE v. TAMPAX SALES CORPORATION.*
Patent Appeal No. 4079.

Court of Customs and Patent Appeals.
Feb. 6, 1939.

*Rehearing denied May 1, 1939.

Orton & Griswold, of New York City (Frederick Griswold, Jr., of New York City, and J. Russell Juten, of Washington, D. C., of counsel), for appellant.

Pennie, Davis, Marvin & Edmonds, of New York City (George E. Middleton, of New York City, Clarence M. Fisher, of Washington, D. C., and Ambrose A. Arnold, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is a trade-mark cancellation proceeding, under the Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 81 et seq., in which the Commissioner of Patents reversed a decision of the Examiner of Trade-Mark Interferences which dismissed appellee's petition for the cancellation of the registration of appellant's trade-mark "Tampad," registration No. 327,833, for absorbent catamenial tampons. The commissioner held that appellee was the owner and prior user of the mark "Tampax," applied to similar goods, and that appellant's registration should be cancelled.

On September 3, 1935, the registration aforesaid was issued to appellant. On November 8, 1935, appellee filed its petition for the cancellation of appellant's said registration, alleging that it was the owner and user of the trade-mark "Tampax" and was the owner of registration No. 294,959, issued June 14, 1932, for the word "Tampax"; that said mark was registered for goods of the same descriptive properties as the goods upon which appellant applied her mark "Tampad," and that petitioner and its predecessors in business had been using said trade-mark continuously since December 1, 1931; that the marks of the parties are confusingly similar, and that the petitioner deemed itself injured by said registration of appellant.

In her answer appellant denied that appellee was the owner of said registration 294,959; denied that appellee had made a trade-mark use of the mark "Tampax", and denied that appellee had been injured by the mark of appellant.

Both parties took testimony. It appears that appellant was a resident of and did business in the State of New York, while appellee's place of business was Denver, Colorado.

Depositions on behalf of appellee were taken at Denver on April 20, 1936; at the taking of said depositions appellant was not represented.

Among such depositions are those of L. B. Davis and Annabelle L. Desmond.

Mr. Davis' testimony given directly in this proceeding is short and reads as follows:

"Q1. Will you please give your name, age, residence, and occupation? A1. L. Bernard Davis; age forty; address 308 Continental Oil Building, Denver, Colorado; attorney and secretary-treasurer of Tampax Sales Corporation.

"Q2. Are you the L. Bernard Davis that testified in Opposition 15043, Tampax Sales Corporation vs. The Absorbent Cotton Company of America, on January 30, 1936? A2. I am.

"Q3. I show you Applicant's Exhibit A, a copy of the testimony taken in that case, and ask you to read it. Is that your testimony? A3. It is.

"Q4. And is it still your testimony on the matters testified to? A4. It is.

"Q5. I show you the exhibits 1 to 3, inclusive, which were introduced in Opposition 15043, Tampax Sales Corporation vs.

The Absorbent Cotton Company of America. Are those the exhibits which you identified and testified to in your testimony in that case? A5. They are.

"Mr. Galbreath: I introduce the exhibits testified to by the witness and ask that they be designated by the exhibit numbers as given them in Opposition 15043.

"(The exhibits presented were marked for identification 'Opposer's Exhibits 1 to 3' inclusive, according to the markings given them in former Opposition 15043, and are enclosed under separate cover and made a part hereof.)

"Direct examination closed.

"No cross examination."

The following appears in the testimony of Annabelle L. Desmond:

"Q2. Are you the Annabelle L. Desmond that testified in Opposition 15043, Tampax Sales Corporation vs. The Absorbent Cotton Company of America, on January 30, 1936? A2. Yes, I am.

"Q3. I show you a copy of the testimony taken in that case and ask you to read it. Is that your testimony? A3. Yes, it is.

"Q4. And is it still your testimony on the matter testified to? A4. Yes, it is.

"Mr. Galbreath: I introduce a copy of the testimony taken in Opposition 15043, Tampax Sales Corporation vs. The Absorbent Cotton Company of America, and ask that it be marked 'Applicant's Exhibit A.'

"(The document presented was marked for identification 'Applicant's Exhibit A' and is attached to this deposition and made a part hereof.)"

In the testimony of Davis found in Exhibit A, offered in evidence by appellee, is the following:

"Q3. How long have you been connected with the Tampax Sales Corporation? A3. Since it was incorporated on January 2, 1934.

"Q4. In what business is the Tampax Sales Corporation engaged? A4. In the manufacturing, distribution, and selling of a catamenial device known under the trade name of Tampax.

\* \* \* \* \* \*

"Q17. How and when did the Tampax Sales Corporation acquire the patents and the trade mark to the product? A17. It acquired the trade mark from a corpora-

tion known as Tampax, Inc. by assignment of the mark, together with the good will in connection therewith, and said assignment was recorded in the Patent Office on November 24, 1934, in Liber M-161, page 440. The patents were assigned by Dr. E. C. Haas, patentee, to the Tampax Sales Corporation on or about July 15, 1935. Prior to that date Tampax Sales Corporation operated under a license agreement from the said E. C. Haas.

"Q18. At the time that you acquired the patent control and trade mark from your predecessors was the product on the market? A18. It was.

"Q19. Under what name? A19. Tampax.

\* \* \* \* \* \*

"Q22. At the time of acquiring the trade mark and patent rights, did the Tampax Sales Corporation also receive an assignment of the goodwill of Tampax, Inc.? A22. It did.

"Q23. Is it a fact, Mr. Davis, that the product Tampax and the trade mark Tampax were in actual use upon the market prior to the time of incorporation of the Tampax Sales Corporation? A23. Yes.

"Q24. And is it a fact that the Tampax Sales Corporation acquired the complete assignment of the trade mark, patent rights, and goodwill of their predecessors, Tampax, Inc.? A24. Yes."

The testimony of the witness Annabelle L. Desmond, contained in said Exhibit A, is not material to any question here involved, inasmuch as it relates only to the use of the mark "Tampax" by appellee since 1934.

Together with said Exhibit A, eighteen documentary exhibits were introduced in evidence in the instant proceedings, but said exhibits were identified only in said Exhibit A.

The certificate of a notary public found in the record states that a copy of the testimony taken by depositions as aforesaid was mailed to appellant's attorneys in New York City on May 6, 1936.

On May 20, 1936, appellant's counsel filed in the Patent Office a motion to suppress said Exhibit A and Exhibits 1 to 18, said motion reading as follows:

"Now comes the party Breese, by her attorney Frederick Griswold, Jr., and moves to suppress and strike from the record the following exhibits of the petitioner, Tampax Sales Corporation:

"Exhibit A

"Exhibits 1 to 18

"As grounds for the motion, it is respectfully submitted that the exhibits are incompetent; were introduced in evidence contrary to the rules; that these exhibits constitute an alleged transcript and exhibits of an alleged opposition proceeding in which the registrant herein, Paula A. M. Breese, was not a party and was not used to discredit the testimony of witnesses in this proceeding.

"And it is further moved that this motion be heard at final Hearing."

In response to this motion we find the following in the record:

"The motion filed May 20, 1936, by the registrant, to strike from the record certain exhibits filed by the petitioner, is noted by the examiner.

"In so far as this motion relates to 'rules' it is indefinite in that these rules are not identified. Regardless of this indefiniteness, further consideration of the motion is postponed to final hearing. It may be stated, however, that at final hearing any testimony taken in behalf of the petitioner, in which the present registrant and respondent is not a party, will not be competent upon which to base a judgment adverse to the registrant.

"Examiner of Interferences,
"Room 3088."

The taking of testimony on behalf of appellant was not begun until June 16, 1936, from which we infer that, at the time of appellant's motion to suppress the evidence taken in another proceeding, the time for taking testimony on behalf of appellee had not expired. The record does not show the time limits for taking testimony by the parties, but no doubt appellee could have obtained leave for retaking the depositions of said witnesses Davis and Desmond upon application therefor.

It is clear to us that appellant's motion to suppress should be treated as a motion to suppress the entire deposition of the witness Davis, for if Exhibit A be eliminated therefrom there is nothing in his testimony that is relevant to the issues in the case.

The Examiner of Trade-mark Interferences did not directly pass upon said motion of appellant, but he apparently considered the testimony in said Exhibit A, and upon all the testimony in the case concluded that appellant was the prior user of the mark "Tampad," and dismissed appellee's application for cancellation.

We would observe at this point that it is clear that the marks of the parties are applied to goods of the same descriptive properties, and that the marks are confusingly similar.

Upon appeal the commissioner, through his first assistant, hereinafter referred to as the commissioner, reversed the decision of the Examiner of Interferences, as hereinbefore stated. In his decision the commissioner stated:

"The Examiner of Trade-Mark Interferences properly found that certain testimony taken in another opposition and offered as Exhibit A for Tampax Sales Corporation should not be here considered, and he also held that a certificate relating to the 'Tampax' registration merely annexed to the record was not the best evidence and that the certificate of registration should have been properly introduced. The Examiner further found that the respondent, Breese, appellee here, was the first to enter the field of business and preceded the petitioner, Tampax Sales Corporation, both as to adoption and use of the mark in trade.

"Examination of the proceedings and testimony convinces me that the appellant has at least made a prima facie showing by the uncontradicted testimony of the witness Davis (Tampax Record pages 25–26) that the Tampax Sales Corporation acquired its trade-mark rights, together with the good will in connection therewith, from Tampax, Inc., and it cites a Patent Office record of an assignment. The assignment is not produced, but on the other hand this witness's testimony was in the presence of the attorney for Breese and there was no cross-examination, nor was any testimony produced to contradict his statement."

The testimony of Davis referred to in the above quotation is his testimony in said Exhibit A.

The commissioner further held that, although the registration by Tampax, Inc. of the mark "Tampax," No. 294,959, was not formally introduced in evidence, a copy thereof was produced before the Examiner of Trade-mark Interferences, and that judicial notice, under the circumstances, would be taken of said registration, and that, by virtue of said registration and the testimony of Davis in Exhibit A, appellee

was entitled to the filing date of the application for said registration No. 294,959, which was February 5, 1932, for the first use of the trade-mark "Tampax," and that appellant had not established a trade-mark use of the mark "Tampad" prior to that date. He therefore reversed the decision of the Examiner of Trade-mark Interferences and granted appellee's application for cancellation.

Thereafter, appellant filed a petition for reconsideration of said decision. In his decision upon said petition the assistant commissioner modified his former decision, stating as follows:

"* * * It may be noted that the decision does refer to the testimony of the witness Davis and later it makes the observation that testimony adduced in another interference might properly be disregarded. The decision is amplified in this particular to the following extent:

"It is noted that in the printed record, pages 4 and 5, appears the testimony of the witness Davis called in this cancellation proceeding and who was asked to read the testimony in Exhibit A taken in an opposition proceeding No. 15,043 and introduced in this proceeding 'As Applicant's Exhibit A,' and that the witness said it was still his testimony 'on the matters testified to.'

"It appears that no counsel was present on behalf of the party Breese. However, Breese could have been represented and could have cross-examined on this testimony. It may, therefore, be properly considered."

He further stated: "As further evidence on the point of the Tampax Sales Corporation being successor to the registrant of the word 'Tampax', namely, Tampax, Inc., the witness Holmes testifies (Rec. page 14) that the license agreements which included the trade-mark and good will of the business were released to the Tampax Sales Corporation. This is further corroborated by the same witness on page 16 of the printed record. This is testimony taken in this cancellation proceeding."

We will first consider whether the commissioner erred in giving any effect to the testimony of Davis contained in said Exhibit A.

Appellee contends that, inasmuch as no objection was made by appellant at the time the testimony of Davis was taken, any irregularity in the taking of the deposition or as to the competency of Exhibit A was waived by her. In support of this contention appellee's counsel cites the case of Doane v. Glenn, 21 Wall. 33, 22 L.Ed. 476, wherein it is stated [page 35]:

"None of the objections to the reading of the deposition go to the testimony of the witness. All of them relate to defects and irregularities which might have been obviated by retaking the deposition. It does not appear that any notice beforehand was given to the counsel of the plaintiffs that they would be made. In such cases the objection must be noted when the deposition is taken, or be presented by a motion to suppress before the trial is begun. The party taking the deposition is entitled to have the question of its admissibility settled in advance. Good faith and due diligence are required on both sides. When such objections, under the circumstances of this case, are withheld until the trial is in progress, they must be regarded as waived, and the deposition should be admitted in evidence. This is demanded by the interests of justice. It is necessary to prevent surprise and the sacrifice of substantial rights. It subjects the other party to no hardship. All that is exacted of him is proper frankness.

"The settled rule of this court is in accordance with these views."

It will be noted that the court there stated that "the objection must be noted when the deposition is taken, or be presented by a motion to suppress before the trial is begun." Such a motion was seasonably made in the case at bar before appellant took any testimony, and therefore the cited case does not support appellee's contention; on the contrary, said case supports the contention of appellant that her motion to suppress should have been granted.

Appellee also cites the case of J. M. Radford Grocery Co. v. Haynie, 5 Cir., 261 F. 349, wherein it was stated: "It is assigned as error that the court, over objection, admitted in evidence testimony given by one of the bankrupts at a meeting of the creditors. Representatives of the defendant were present at the meeting. The admission of the testimony formerly given by the bankrupt followed the making by him, in the course of his examination as a witness in the trial, of a statement to the effect that the report of his testi-

mony given at the meeting of creditors was correct, and that he confirmed that testimony as being the truth. The witness, by adopting his formerly given testimony, made it a part of the testimony given by him in the trial. So far as appears, this was done without objection. The result of the court's action, which is complained of, was not to admit in evidence testimony not deposed to in the trial. That ruling was not erroneous."

It will be observed that the opening statement in the quotation refers to the action of the court in admitting, "over objection," testimony given by one of the bankrupts at a meeting of the creditors. In the latter part of the quotation, on the other hand, referring to the adoption by the witness of his testimony previously given, it is stated that "this was done without objection." From this last statement it would appear that the objection spoken of in the first sentence was not based upon the ground that it was improper for the witness so to adopt prior testimony. In view of this, it is not clear how such case supports appellee's contention here.

Furthermore, in the case at bar there was a clear violation of the rules of the Patent Office in the taking of the depositions of said Davis and Desmond. Rule 60 of the rules of the Patent Office, relating to registration of trade-marks, reads as follows: "60. The proceedings, on oppositions, and on applications for cancellation, shall follow, as nearly as practicable, the practice in interferences between applications for patents. Pleadings and procedure with respect thereto shall be governed by the rules in equity suits in the United States courts."

Rule 156 of the rules of practice in the United States Patent Office, relating to testimony in patent interferences, reads as follows:

"156. The testimony will be taken in answer to interrogatories, with the questions and answers committed to writing in their regular order by the officer, or by some person not interested in the case either as a party thereto or as attorney. With the written consent of all parties present the testimony may be taken down stenographically and transcribed. The testimony shall be taken down by the officer or in his presence, except when his presence is waived on the record by agreement of the parties.

\* \* \* \* \* \*

"In the absence of all opposing parties and their counsel, testimony may be taken in longhand, typewriting, or stenographically."

Rule 157 provides that, upon motion duly made and granted, testimony taken in any interference proceeding may be used in any subsequent interference proceeding, so far as relevant and material, subject to the right of any contesting party to recall the witnesses whose depositions have been taken.

It is conceded that no such motion was made in the case at bar. That testimony in a prior interference may not, in the absence of such a motion, be introduced in a subsequent interference was held in Noxon v. Potts, 94 F.2d 388, 25 C.C. P.A., Patents, 859.

It is our opinion that the attempt to incorporate in the instant case the testimony of Davis given in another case was clearly a violation of the rules of the Patent Office. While such a violation might have been waived by appellant, it clearly was not waived because a motion to suppress the deposition was promptly made.

It is clear that rule 156, supra, requires testimony by deposition to be taken de novo before the examining officer, and this is confirmed by the fact that a separate rule, 157, provides specific and different procedure whereby testimony given in a prior interference may be incorporated into the record of a later case.

That a motion to suppress a deposition improperly taken, if seasonably made, is equivalent to objections thereto if made at the time of taking the deposition, is held in the following cases: York Mfg. Company v. Illinois Central Railroad, 70 U.S. 107, 3 Wall. 107, 18 L.Ed. 170; Howard v. Stillwell & Bierce Manufacturing Company, 139 U.S. 199, 11 S.Ct. 500, 35 L.Ed. 147; Insurance Company of North America v. Guardiola, 129 U.S. 642, 9 S.Ct. 425, 32 L.Ed. 802.

In the case last cited it is suggested that objections to documents or memoranda embodied in or annexed to depositions might perhaps be more properly made by motion to suppress them before the trial.

It is our opinion that appellant's motion to suppress the depositions of Davis and Desmond should have been granted, and that the commissioner was right in

his first decision that they should be disregarded.

This holding may seem technical for the reason that the witnesses Davis and Desmond could, and probably would, have given the same testimony in the case at bar as was given by them in the case which embraced Exhibit A; but appellant had a right to expect that these depositions would be taken in accordance with well established principles of law and the rules of the Patent Office, and when her counsel discovered that the depositions had not been so taken they had the right to object to them by promptly moving for their suppression, which they did. We must presume that appellee could have corrected the irregularity in the taking of said depositions, but it failed to do so.

We therefore proceed to the consideration of the evidence in the case, disregarding the depositions of Davis and Desmond.

 Appellant, in her answer, challenged the allegation of appellee in its petition for cancellation that it was the owner of the trade-mark "Tampax" and the owner of said trade-mark registration No. 294,959, issued to Tampax, Inc. The burden was therefore upon appellee to prove ownership and use of the trade-mark "Tampax," and before it could rely upon said registration No. 294,959, the burden was upon it to establish that ownership of the same had been transferred to it.

It appears that appellee was incorporated on January 2, 1934, and of course its use of the trade-mark "Tampax" could not antedate that time.

One Dr. Haas, a witness on behalf of appellee, testified that he was the original owner of said mark "Tampax," having applied it to a catamenial device invented by him. It appears from the record that he made application for a patent for such a device on November 19, 1931, upon which application patent No. 1,926,900 was issued on September 12, 1933. Said witness further testified that in July or August, 1935, he sold said patent to appellee; that about April, 1931, he personally began the manufacture of said product; that about September, 1931, he gave a license to one Hildebrand to manufacture and sell the product invented by him, and that at the time of said license to Hildebrand he also transferred to him the ownership of said trade-mark "Tampax," and the good-will of his business in the product to which the

mark was applied; that in December, 1931, Hildebrand incorporated his business under the name of "Tampax, Inc.," and said corporation thereafter manufactured said product and applied the trade-mark "Tampax" thereto. The only reference that this witness made to appellee was the statement that in 1935 he sold to it his patent, as above noted.

One Frank M. Holmes, a witness for appellee, testified that he had been acquainted with the product known as "Tampax" since not later than June, 1931; he further testified as follows:

"Q7. Mr. Holmes, did you later become interested in the commercial exploitation of the product Tampax? A7. I did.

"Q8. How and under what circumstances? A8. About the first of September, 1931, Mr. Hildebrand came to my office with a view to forming a company for the manufacture and sale of the product Tampax.

"Q9. To your knowledge did Mr. Hildebrand at that time have a contract with Dr. Haas? A9. He had a license agreement for the manufacture and sale of Tampax, issued by Dr. Haas to him.

"Q10. Did you and Mr. Hildebrand and other people later organize a corporation to handle Tampax? A10. Yes, we immediately made plans to form such a company with a view of securing the necessary finances, and on December 11, 1931, the company was actually incorporated in the State of Colorado under the name of Tampax, Inc.

"Q11. What office did you hold in the corporation Tampax, Inc.? A11. I was a director and secretary, and was one of the incorporators of the company.

"Q12. Did Tampax, Inc. secure from Mr. Hildebrand the license agreement which he had with Dr. Haas? A12. Yes, the license agreement held by Mr. Hildebrand was transferred to Tampax, Inc., with the consent of Dr. Earle C. Haas.

"Q13. Did that transfer also include the trade mark Tampax and the good will of the business? A13. It did.

"Q14. How long was Tampax, Inc. in business operating under the license agreement between your corporation and Dr. Haas? A14. We operated under that license agreement until the license agreement was released to the Tampax Sales Corporation on January 2, 1934."

The only reference in said testimony or in any testimony on behalf of appellee respecting appellee's ownership of the trade-mark "Tampax" is the last answer above quoted, from which it appears that the license agreement between Tampax, Inc. and the witness Dr. Haas was released on January 2, 1934, to Tampax Sales Corporation. As hereinbefore stated, Dr. Haas testified that at the time he licensed Hildebrand to manufacture and sell his product he also transferred the ownership of the trade-mark and the good-will of his business in Tampax. It does not appear whether such license and transfer was in writing, but, according to the witness, Hildebrand became the absolute owner of the trade-mark through the transfer of the business and good-will of the business to him, together with a license to manufacture and sell the product upon which the mark was applied. The said Holmes testified that Tampax, Inc. not only secured a transfer of the license agreement between Hildebrand and Dr. Haas, with the consent of the latter, but that the transfer also included the trade-mark and good-will of the business owned by Hildebrand. There is no evidence that Tampax, Inc. ever sold to appellee its business and good-will, in so far as it related to the product upon which the mark "Tampax" was applied.

Clearly a release of a license agreement would not of itself operate as a sale and transfer of any business and good-will of Tampax, Inc. We may of course surmise that, Tampax, Inc. having released to the Tampax Sales Corporation the license to manufacture and sell the patented product to which the mark "Tampax" was applied, in the very nature of things there would be a sale and transfer of the business of Tampax, Inc., in connection with such release, but mere surmise cannot take the place of proof.

There is no evidence whatever, in so much of the record as is proper to be considered, of any assignment to appellee of registration No. 294,959.

We think it proper to observe in this connection that none of the counsel appearing for appellee in this court participated in the taking of the testimony in behalf of appellee.

 Upon the record before us, we are compelled to hold that appellee has not established ownership of the registration of said mark "Tampax," registration No. 294,-959, or any ownership of said mark; that

its first use of said mark was in January, 1934, while the evidence on behalf of appellant clearly establishes the use by her of the mark "Tampad" as a trade-mark upon her product at least as early as the fall of 1932. Whether, under the evidence, she is entitled to any earlier date it is unnecessary here to determine.

It is our conclusion that appellee has failed to establish facts sufficient to sustain its petition for cancellation, and the decision of the Commissioner of Patents is reversed.

Reversed.