29 C.C.P.A.(Patents)

**GOHEEN CORPORATION v. WHITE CO.**
Patent Appeal No. 4586.

Court of Customs and Patent Appeals.
March 23, 1942.

S. Michael Ress, of New York City, for appellant.

Karl W. Flocks, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This appeal involves proceedings in the United States Patent Office wherein the Commissioner of Patents adjudged that a trade-mark of appellant, hereinafter re-

ferred to as "Vita-Var," should be cancelled. Vita-Var has appealed here from the said decision of the commissioner.

The appellee, The White Company, hereinafter referred to as "White," in 1939 filed in the Patent Office a petition for the cancellation of the registration of Vita-Var's mark which featured the word "Hydrolite," the trade-mark consisting of the word "Hydrolite" printed in capital letters in front of an ordinary molded hollow block of building material. The mark is used in connection with the sale of a waterproofing compound (a powder) which is mixed integrally with concrete when used. In other words, the waterproofing compound, sold under the trade-mark "Hydrolite," is to be mixed when concrete is made for the purpose of making the concrete impervious to water. The mark, according to the record, has been used on the said goods of Vita-Var and its predecessor for about 40 years. The registration of the trade-mark was on October 17, 1922. Vita-Var is also a manufacturer of paint.

White is also a manufacturer of paint and began the use of the identical mark (except its mark consists of the word "Hydrolite" alone without the said background) on casein wall paint "about the year 1935 and not before that year." White's paint is, as the term "casein wall paint" implies, a buttermilk product used on such places as the walls of rooms where it is desirable to have a variety of tints or shades of color, which coloring is referred to as water colors, water constituting the liquid component.

White's petition for cancellation of the said registered mark is predicated in part upon its said use of said mark on said casein wall paint. It alleges that the term "Hydrolite" is descriptive and a misspelling of the word "hydrolyte"; that a waterproofing compound is a hydrolyte; that the registrant did not disclaim the word "Hydrolite" apart from its composite mark including the concrete block; "that if the public or the petitioner makes the same waterproofing article, they or it is at liberty to call it by the same descriptive name and the existence of the improper registration No. 160,195 acts to inhibit the public and petitioner from exercising their and its rights"; and that "hydrolytes are substances which may be made and sold by anyone including petitioner, and therefore anyone and petitioner is entitled to freely sell hydrolytes by the name which those substances bear."

There is no allegation in the petition that White uses said term on a waterproofing compound or on anything other than a casein wall paint and it is admitted by White that it uses the mark only on casein wall paint. It alleges that unless said registration of "Hydrolite" is cancelled, its good will and large expenditures will be seriously injured or damaged. There is no allegation in the petition for cancellation that White makes or sells, under any trade-mark, a waterproofing compound. White's Exhibit 13, found in the record (admitted under restrictions not necessary to state here), is an affidavit by one Elmer B. Schuler, technical director of the White Company, and contains the following:

"Deponent further states that in the course of his technical experience and his relation to the coating trade he has been made aware of the fact that there are concrete waterproofings on the market, that he knows of such concrete waterproofings and that these concrete waterproofings depend for their action upon hydrolitic decomposition, the reaction products of which form compounds with the calcium of the cement which act as waterproofing agents. Deponent further states that as an example of such concrete waterproofing, ammonium stearate is sold for this purpose. Deponent further states that he knows that The White Company is marketing ammonium stearate for this purpose and further that the Somay Products Company of Miami, Florida are also marketing a similar product and that there are several other sources for this type of waterproofing, as the action of ammonium stearate in concrete is quite generally known.

"Deponent further states that ammonium stearate being a salt of a weak acid and a strong base is rapidly hydrolized when it is mixed with water, forming an ammonium hydroxide and stearic acid."

It is stipulated in the record that prior to the institution of the present cancellation proceeding Vita-Var gave notice to White of infringement and requested that White discontinue the use of the mark. This fact, however, was not alleged in the petition for cancellation.

The issues presented, or which were attempted to be presented, by the petition

for cancellation, which are necessary for our consideration here, were properly traversed in the answer by Vita-Var.

The Examiner of Interferences held that "Hydrolite" was not descriptive of the merchandise sold under that trade-mark by Vita-Var and that it had not been made to appear, from the record, that White is qualified under section 13 of the Trade-Mark Act of 1905, 15 U.S.C.A. § 93, by sustaining its burden of proving damage flowing from the registration of said mark, and upon these holdings he dismissed the application for cancellation and recommended that the registration be not cancelled.

Upon appeal to the Commissioner of Patents, he reversed the decision of the Examiner of Interferences and adjudged that the registration be cancelled upon the ground that the mark was descriptive and further said: "It appearing that petitioner is using the word 'Hydrolite' on wall paints and that registrant has given to petitioner notice of infringement of the trade-mark sought to be canceled and has requested petitioner to discontinue use of the mark, injury to petitioner is considered to have been shown, even though the words 'Hydrolyte' or 'Hydrolite' may not have been employed in trade with reference to any concrete waterproofing hydrolyte before registrant's registration thereof for concrete waterproofing compounds, and registrant's registration antedates petitioner's use of the mark. Sackrete, Inc., v. Lillard, 501 O.G. 874, 41 U.S.P.Q. 40."

White's contentions here, with certain exceptions, are substantially those alleged in the petition for cancellation, most of which have heretofore been stated. In addition to anything said in the petition for cancellation, White urges in substance that anyone who wishes to engage in the trade of compounds used for waterproofing and the like has the right to petition for cancellation of Vita-Var's mark, and that since Vita-Var gave notice of infringement to White and requested that White discontinue the use of the mark, White has shown such interest as would entitle it to qualify under the damage clause of the cancellation statute.

The registrant, Vita-Var, contends that the decisions of the patent tribunals, heretofore made, with reference to a similar mark "Hydrolithic," should have weight in the present determination and points out that the examiner in 1910 held that the mark "Hydrolithic" was descriptive, but that the commissioner reversed his decision and held that it was not descriptive; that when appellant applied for the registration of the instant mark "Hydrolite" it was determined that the mark was not descriptive. Thus appellant argues: "Accordingly two Examiners and one Commissioner have found in favor of non-descriptiveness, as against one Examiner and one Commissioner who have arrived at a contrary conclusion." It argues further that White has deliberately adopted the mark of Vita-Var and does not anywhere disclaim actual knowledge of the prior use of the mark and therefore does not come into court with clean hands.

The first question presented for decision is whether or not White's petition for cancellation should have been dismissed for the reason that it had not shown damage as required by the statute.

White frankly admits in oral argument that casein wall paint and a waterproof compound to be mixed with concrete, etc., are not goods of the same descriptive properties. This admission would seem to suggest that there was no likelihood of confusion in a trade-mark sense, regardless of what view might be taken, under certain circumstances, in an action for unfair competition. White, however, argues that since it had been threatened concerning its continued use of its mark on the casein wall paint, that fact alone is sufficient showing of damages to warrant the conclusion that it was entitled to petition for cancellation.

Upon the concession above stated and upon the instant record, we are of the opinion that White has not shown such damage as is required by the statute to qualify it to petition for the said cancellation. White has cited this court's decision in Model Brassiere Co., Inc., v. Bromley-Shepard Co., Inc., 49 F.2d 482, 18 C.C.P.A., Patents, 1294, and relies upon it and the case of Elishewitz v. Leyser Green Co., 47 App.D.C. 193, 8 T.M.R. 34, as supporting authority. The latter case held that injury would be presumed to follow the improper registration of a descriptive word. It did not state, however, that the petitioner in that case was or was not engaged in a business where it could appropriately use the descriptive mark for the purpose of describing its merchandise. That case was cited in Model Brassiere Co., Inc., v.

Bromley-Shepard Co., Inc., supra, and the language there used was quoted for the purpose of showing that injury would be presumed to follow the improper registration of a descriptive mark where the alleged injured party was not an intermeddler but had sufficient interest to sustain its position as a petitioner for cancellation.

In the Model Brassiere Co. case, supra, the so-called "Ensemble" case, the alleged owner of the trade-mark "Ensemble" was engaged in the business of making an "ensemble" consisting of ladies' underwear, and the petitioner also sold a combination of undergarments for ladies. This court held that it was not necessary to show a use of the trade-mark at the time of filing the application by the petitioner but that it was required "to show a statement of facts from which it may be found that he was being injured at that time." [49 F.2d 486, 18 C.C.P.A., Patents, 1294.] It was further held: "He would have no right to complain about the registration of the offending mark if, at the time he filed his petition, he was not being injured by it."

The case of McIlhenny's Son v. New Iberia Extract of Tabasco Pepper Co., 30 App.D.C. 337, was cited and discussed in the "Ensemble" case, and it was therein pointed out that in the McIlhenny Sons Co. case it was stated that: " * * * The statute does not contemplate that anyone may petition the commissioner to cancel a trademark regularly registered, but it does provide that anyone who 'shall deem himself injured' may do so. The petition, therefore, must contain a statement of fact on this jurisdictional question, sufficiently full to show that the petitioner has been injured by the registry of the mark he seeks to have canceled; and this fact must not be left to conjecture, but must affirmatively appear. * * *"

■ In United Shoe Machinery Corp. v. Compo Shoe Machinery Corp., 56 F.2d 292, 295, 19 C.C.P.A., Patents, 1009, 1014, we said: "The statute gives any person who believes he would be damaged the right to oppose, and any person who shall deem himself injured the right to petition for cancellation. These provisions are very broad, and should be broadly construed. Of course, Congress did not mean to grant these rights to a mere intermeddler, to one who had no interest in the use of the term, and thereby authorize such a person to interfere in the affairs of others and in the business of the Patent Office. Certainly the person seeking to cancel a registration or oppose an application for registration must have a greater interest than a member of the general public who by such registration suffers no invasion of his rights and privileges. It is well understood in the application of equitable remedies that one who seeks such application is bound to show an interest in a suit personal to himself and not such an interest as he has only by virtue of being a citizen. Tyler v. Judges of the Court of Registration, 179 U.S. 405, 406, 21 S.Ct. 206, 45 L. Ed. 252; Massachusetts v. Mellon, 262 U. S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078. We know of no reason why this rule does not apply here."

■ As we see it, the alleged threats of Vita-Var, under the facts alleged in the petition for cancellation, could have been ignored and White could have stood its ground and no damage to White would have resulted. White has not alleged in its petition for cancellation that at or before the time it filed its petition it used the mark on any kind of goods similar to those of Vita-Var, nor does it disclose a statement of facts in said petition showing that it intended to use or was in a position to use that term descriptively on any product similar to that of Vita-Var. Although White has the aforesaid Exhibit 13 in the record showing that it manufactures and sells, but not under the name of "Hydrolite," a material, to wit, ammonium stearate, which has the characteristics, when hydrolyzed, of making cement waterproof, this fact has not been made a part of White's case in its petition for cancellation and can have no effect in our determination of the question as to whether or not White has proved the damage required by the statute. White's position is not strengthened by alleging the fact that under the term "Hydrolite" it has built up a large business on goods of a class differing from that of Vita-Var.

If White had alleged in its petition for cancellation, and offered proof establishing that it, at the time of filing the petition, was manufacturing and selling a waterproofing compound similar to that of Vita-Var, and that it intended to use and was in a position to use the word "Hydrolite" in selling its waterproofing compound, a different situation with respect to the right to file a petition for cancellation might have been presented.

We think White has failed to allege and show injury in the statutory sense, and its petition for cancellation should have been dismissed.

In view of the above holding, it is not absolutely necessary that this court pass upon the second issue, to wit, is the "Hydrolite" trade-mark descriptive of the goods upon which it is used, since the commissioner has no right to cancel a descriptive trade-mark except in the manner prescribed by the statute, and a holding that the petition should have been dismissed would necessarily carry with it a reversal of the holding of the commissioner that the trade-mark should be cancelled.

However, in view of the litigation which has taken place in the past with reference to the alleged descriptive character of the similar word "Hydrolithic" and the divergent views as to the character of the mark "Hydrolite" we think that we should, for the benefit of the Patent Office and the bar, and especially of business interests which may be concerned, pass upon the question and thereby put an end, as far as possible, to litigation and repeated controversy concerning the alleged descriptive character of the mark.

We do not think the mark "Hydrolite" is descriptive of a waterproofing compound which is mixed with concrete for the purpose of making the product water resistant. White has set out in its brief various definitions found in Webster's New International Dictionary, 1936, as follows:

"Hydrolysis, n; pl. hydrolyses (-sez).

"A chemical process of decomposition involving addition of the elements of water."

"Hydrolyst, n. Chem.

"A hydrolyzing agent."

"Hydrolyte, n. Chem.

"Any substance subjected to hydrolysis."

"Hydrolytic, adj. Chem.

"Of, pertaining to, or causing, hydrolysis."

It will be noticed that the definition of "hydrolyte" is given as "Any substance subjected to hydrolysis." A thing which has been subjected to hydrolysis means that it has been subjected to a hydrolyzing agent. There is nothing of a hydro-character ("hydro-" meaning water) about registrant's waterproofing substance. According to the above definitions, which we find are in accord with all the lexicographical author-ities, a hydrolyte (of which petitioner claims "Hydrolite" is a misspelling) is something that has been subjected to hydrolysis. It is the product of hydrolysis and not the materials used in the hydrolytic process, and the fact, if it be a fact, that in a loose use of the term "Hydrolite," since registrant began the use of its trade-mark, reference to a waterproofing powder as a "hydrolyte" may have been made, does not change the situation. The word "aspirin," formerly a trade name, has become a common English word which defines a certain white crystalline compound—the acetate of salicylic acid. The term "zipper" was originally a trade-mark. It is now commonly used to describe the characteristics of certain kinds of slide fastening devices.

As far as we have been able to observe from the record, when appellant adopted and registered its trade-mark, the word "hydrolyte" or "Hydrolite" could only have been suggestive of a quality of the product produced by the use of the merchandise sold under the trade name, but not descriptive of the goods upon which it was used. In Van Camp Sea Food Co. v. Alexender B. Stewart Organizations, 50 F.2d 976, 979, 18 C.C.P.A., Patents, 1415, 1420, it was said: "* * * It is well settled in adjudicated cases that a valid trademark may be highly suggestive (in our opinion ofttimes the best ones are), without being offensively descriptive."

White's petition for cancellation states that the term "Hydrolite" may be used by the public to describe all products capable of being affected by a hydrolyst and all waterproofing compounds capable of being affected by a hydrolyst. It further states in its petition that "a hydrolyte is any substance affected by a hydrolyst." This, to our minds, is tantamount to saying that a hydrolyte is something that has been subjected to hydrolysis. The instant material, under petitioner's own definition, has not been subjected to hydrolysis. The word "Hydrolite" suggests that it has something to do with some process that may involve hydrolysis.

In White's brief it states that "Hydrolite" is descriptive of substances which are capable of hydrolysis by a hydrolytic process. We find no support in any definition cited or found that "Hydrolite" or "hydrolyte" is a substance that is capable of being hydrolyzed. On the contrary, as before stated, all the definitions show a "hy-

drolyte" to be a substance that has been hydrolyzed.

We, therefore, are of the opinion that the trade-mark "Hydrolite" is not descriptive of the goods upon which it is used by Vita-Var and that White, in this proceeding, has not shown the required statutory injury. For the foregoing reasons, the decision of the Commissioner of Patents is reversed.

Reversed.

LENROOT, Associate Judge, concurs in the result.