49 CCPA

**PRINCE DOG AND CAT FOOD COMPANY d. b. a. San Antonio Canning Co., Appellant,**

v.

**CENTRAL NEBRASKA PACKING CO. d. b. a. Star Sales Company, Appellee.**

**Patent Appeal No. 6821.**

United States Court of Customs and Patent Appeals.

July 25, 1962.

William G. MacKay, San Francisco, Cal. (Charles R. Allen, Jr., Washington, D. C., of counsel), for appellant.

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

Harris, Kiech, Russell & Kern and Warren L. Kern, Los Angeles, Cal., for appellee.

Before WORLEY, Chief Judge, RICH and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

Appellant-petitioner appeals from the decision of the Trademark Trial and Appeal Board (128 USPQ 405) which dismissed its petition to cancel respondent-appellee's principal register registration No. 627,506. The registration which petitioner seeks to cancel is for a composite mark consisting of the words "CROWN PRINCE" placed over an illustration of the head and front paws of a small dog. This composite mark was registered May 22, 1956 for "DOG AND CAT FOOD, in CLASS 46". The registration recites the date of first use in commerce as June 15, 1955 and was issued to the "North Platte Rendering Company (Nebraska Corporation), doing business as Star Sales Company." [1]

Petitioner's Petition for Cancellation, filed October 6, 1958, states that:

" * * * Prince Dog and Cat Food Company, a partnership composed of C. W. Bueche, Sr., C. W. Bueche, Jr., and Allene Estes, also doing business as San Antonio Canning Co. * * * deems itself injured by said registration and hereby applies for cancellation thereof."

The first four paragraphs of petitioner's grounds for cancellation are as follows:

"1. The said mark consisting of the term CROWN PRINCE is confusingly similar to and is deceptively similar to the trademark owned and controlled by the petitioner, which mark PRINCE is now in use and has been used for canned dog and cat

1. Respondent's Exhibit 1, a certificate of change of name, indicates that in 1959, respondent's corporate name was changed from "North Platte Rendering Company" to "Central Nebraska Packing Company", the respondent/appellee whose place of business is located in North Platte, Nebraska.

food since long prior to June 15, 1955.

"2. The said mark consisting of the term CROWN PRINCE is confusingly similar to, and is substantially identical to, the trademark owned and controlled by the petitioner, which mark PRINCE is now in use and has been used for canned dog and cat food since long prior to June 15, 1955.

"3. The goods [as] to which the registrant alleges use of the said trademark CROWN PRINCE are the same as, and of the same descriptive properties as the goods to which the petitioner is applying and has applied its valued trademark PRINCE since long prior to June 15, 1955, and at least as early as 1937.

"4. The petitioner is informed and believes and alleges it to be a fact that the registrant has made no use of the trademark CROWN PRINCE prior to June 15, 1955, the date verified in its application."

Petitioner's fifth and last ground alleges serious injury to "the valued trademark PRINCE owned and controlled by this petitioner."

Respondent, in its Answer to the Petition for Cancellation, denied all the allegations of the petition except that contained in the fourth paragraph, which allegation was admitted. Respondent's Answer alleges that the petition for cancellation did not state a claim upon which relief could be granted and that petitioner had not used "its alleged mark 'PRINCE' in commerce prior to June 15, 1955." Respondent's Answer further requested, as *relief in the alternative*, that if the petitioner was found to have been the prior user of "PRINCE" in certain areas and if the marks as applied to the goods were found to be confusingly similar, that rather than to cancel its registration, respondent's registration should be restricted to exclude the areas in which petitioner established its prior lawful use of its mark.

The Trademark Trial and Appeal Board found that petitioner had used PRINCE since 1937 in Texas and "at some indefinite time in the 1950's" in Louisiana and further stated:

"* * * considering that respondent adopted and used first 'PRINCE' and later 'CROWN PRINCE' without any knowledge of petitioner's prior use of 'PRINCE', and that respondent in its trading area, which is separate and distinct from that of petitioner obviously possesses a very valuable goodwill symbolized by its mark 'CROWN PRINCE', it is concluded that the interests of justice would best be served herein not by cancelling but by restricting respondent's registration so that it will cover only those states in which the record shows it has actually used the mark. * * * "

The board concluded its decision by dismissing the petition and restricting respondent's registration to the states in which *respondent* had established use of its mark.

The two issues presented for our decision are:

"1. Was the board correct in dismissing the Petition for Cancellation?

"2. Did the board correctly restrict respondent's registration?"

■ The alleged damage to petitioner arises from respondent's registration of a mark which petitioner alleges to so resemble its mark "PRINCE" previously used in the United States as to be likely when applied to the goods of registrant to cause confusion, mistake or deception of purchasers. Petitioner has the burden of proof of these allegations.

Petitioner, to discharge this burden, offered in evidence a number of documentary exhibits and the testimony of two witnesses to prove the extent of its use of "PRINCE" on dog and cat foods prior to June 15, 1955.

■ The exhibits in evidence include labels, letters from label printing concerns showing summary tabulations of the number of labels ordered in certain years, invoices of shipments of dog and

cat food to various wholesalers and retailers, newspaper advertisements, advertisements in various dog show programs and photographs of various advertising displays used for the display of PRINCE animal foods. A careful study of all these exhibits and the testimony relative thereto forces us to the conclusion that none of them in any way establishes use of the mark PRINCE on dog and cat food *by petitioner* prior to June 15, 1955. The labels are undated, the earliest dated shipment invoice is 1956, the newspaper ads are dated 1958 and 1959, the earliest date on the dog show programs is 1956 and the various photographs of advertising displays, etc. are undated.

The two letters from label printing concerns summarize the number of "PRINCE" labels ordered from each concern during certain years. The letter from the Schmidt Lithograph Company of San Francisco, addressed to Mr. C. W. Bueche, Jr. of the Prince Dog and Cat Food Company, states that from 1937 to 1941 a total of 1,705,600 labels were ordered. The other letter from the Louis Roesch Co. of San Francisco, addressed to the San Antonio Canning Company, to the attention of "Mr. Chas. Bueche, Jr.", states that from 1951 to 1959, approximately 73,000,000 labels were ordered. We do not think that these letters constitute sufficient proof of *petitioner's* use of the PRINCE mark prior to 1955 or at any time for the reasons discussed immediately below.[2]

The testimony of petitioner's two witnesses fails to establish *its* use of the mark prior to June 15, 1955. Petitioner, as stated in its Petition for Cancellation, is a partnership. In said Petition, filed *October 6, 1958*, it is this *partnership* which deems itself injured. Petitioner's

Exhibit E is a *Texas Certificate of Registration,* No. 8113, registered February 11, 1938 in the name of C. W. Bueche, Sr. and an assignment of this registration dated *June 3, 1959* from C. W. Bueche, Sr. to the petitioner/partnership.

The *only* evidence in the record as to when the petitioner partnership was formed is found in the oral testimony of witness C. W. Bueche, Jr. as follows:

"Q32. Mr. Bueche, to your knowledge has the trademark 'Prince' ever been registered? A. Yes, the trademark 'Prince' has been registered in Austin. I believe we have a registration copy here.

"Q33. Do you recall by whom the mark was registered? A. It was registered by C. W. Bueche, Sr.

"Q34. Incidentally, when was the partnership organized, if you know? A. *I believe it was formed in '48. That's when I resumed as manager of the company."* [Emphasis added.]

■ A cancellation petitioner, under the Lanham Act, as well as it predecessors, must present evidence that it will be damaged by the existence of the registration sought to be cancelled. A person not entitled to use a mark which would be likely to be confused with the registered mark when applied to the goods of the registrant does not have a legal standing to allege damage under section 14 of the Lanham Act. Cf. Goheen Corp. v. White Co., 126 F.2d 481, 29 CCPA 926.

■ The present record establishes that petitioner, a partnership, had no legal right to use the Texas state registered mark PRINCE in Texas earlier than 1959 when it was assigned by its owner, C. W. Bueche, Sr.[3] Under Texas law, the

---

2. We have considered these letters despite the fact that as hearsay evidence they are of no probative value since they are at best nothing but unsworn statements of persons not available for cross-examination and are not shown to be records (invoices, shipping orders, etc.) kept in the ordinary course of business. Such records, presumably available, of the two

printing concerns would be the best evidence, not a summary of these records made at petitioner's request by a party not available for cross-examination.

3. While the written assignment of 1959 states that the mark is assigned "as of 1949", no reason is given in the assignment and none has been established in

"certificate of filing" of the mark owned by C. W. Bueche, Sr.,

> " * * * shall in all suits and prosecutions under this chapter be sufficient proof of the adoption of such label, trademark, design, device, imprint or form of advertisement, and of the right of such person, association or union to adopt the same.
>
> * * * " (Vernon's Texas Civ. Statutes, 1948, Article 851)

Petitioner's testimony does not establish *who* used the mark "since 1937", or *who* was using it in 1958 when the Petition for Cancellation alleging damage to petitioner was filed. For all the present record shows, the mark may have been used by C. W. Bueche, Sr., in 1937 and subsequently abandoned by him, or it may have been retained by him for his own use when the partnership was formed.

The facts, as presented in the record, leave the following questions unanswered. First, was petitioner, a partnership, in existence and using the mark PRINCE prior to June 15, 1955? We know from the record only that the partnership was believed to have been formed "in '48". Second, if the petitioner-partnership was formed and using PRINCE prior to June 15, 1955, was its use lawful? The 1959 assignment from C. W. Bueche, Sr. is inconclusive. Third, was the petitioner-partnership lawfully using the mark "PRINCE" in 1958 when it filed the Petition for Cancellation? As stated above, the mark was not assigned to petitioner until 1959 and there is no evidence of record as to whether it was the petitioner-partnership or C. W. Bueche, Sr. who used the mark prior to its assignment in 1959.

▆▆▆ The record clearly establishes that the mark CROWN PRINCE has been used by respondent since June 15, 1955, the date stated in its trademark registration. Cancellation of a valuable registration around which a large and valuable business goodwill has been built should be granted only with "due caution and only after a most careful study of all the facts." Sleepmaster Products Co., Inc. v. American Auto-Felt Corp., 241 F.2d 738, 44 CCPA 784. Petitioner, to sustain its burden of proof, must leave nothing to conjecture.

As previously pointed out, the evidence submitted by petitioner leaves much to conjecture. There is no pertinent documentary evidence establishing use of petitioner's trademark prior to June 15, 1955. Petitioner's entire record fails to establish any date of lawful use *by petitioner* earlier than the date of first use by registrant. For example, petitioner could have submitted the Partnership Certificate as documentary evidence.[4] Petitioner presumably could have called C. W. Bueche, Sr. as a witness.[5] Petitioner did not establish by the testimony of the two witnesses it called, any use of the mark PRINCE *by petitioner* at any date prior to respondent's proven date of first use. Whether these omissions were intentional or merely oversights by petitioner,[6] they result in a record which

---

this record why the assignment should be given a retroactive effect. We may infer that the earlier date may refer to some partnership agreement, presumably oral. However, we cannot give such an assignment a retroactive effect on any basis established here since as stated in Article 849 of Vernon's Texas Statutes, 1948:

"Any owner of a name or names, trade name, mark or design recorded as herein provided and who desires to convey or assign same shall do so by written assignment duly acknowledged, and filed with said county clerk, * * *."

4. Such a certificate was required in 1948 to be filed and acknowledged by a County Clerk, Article 6117, Vernon's Texas Statutes, 1948, before " * * * such partnership shall be deemed to have been formed * * *."

5.

"XQ135. Is your father out of town? A. No, he is in another business. He is running another business now.

"XQ136. Is he in good health? A. Yes, in very good health."

6. We have noted the several references to fires in 1941 and 1956 which presumably destroyed certain of petitioner's business

fails entirely to sustain petitioner's burden.

While the Petition for Cancellation asserts damage to the petitioner, *a partnership*, in 1958, there has been a total failure of proof that such prior use of PRINCE by C. W. Bueche, Sr., as may be inferred from the record, enures to the benefit of petitioner-partnership. In the absence of such evidence and especially since the present record shows a legal right in the partnership to use the name "Prince", only since the 1959 assignment of the Texas State registration, we will not resort to conjecture to sustain the petition. See Breese v. Tampax Sales Corp., 102 F.2d 808, 26 CCPA 994. The decision of the Trademark Trial and Appeal Board, insofar as it dismissed the petition, is, therefore, affirmed.

The remaining issue to be decided is whether the board correctly restricted the respondent's registration.

 Section 18 of the Lanham Act (15 U.S.C. § 1068, 15 U.S.C.A. § 1068), gives the necessary authority to restrict a registration. It provides:

"In such proceedings the Commissioner may refuse to register the opposed mark, *may* cancel or *restrict the registration of a registered mark*, or may refuse to register any or all of several interfering marks, or may register the mark or marks for the person or persons entitled thereto, *as the rights of the parties hereunder may be established in the proceedings: Provided,* That in the case of the registration of any mark based on concurrent use, the Commissioner shall determine and fix the conditions and limitations provided for in subsection (d) of section 1052 of this title." [Emphasis added.]

This section gives the Commissioner (or the Trademark Trial and Appeal Board at his direction, 15 U.S.C.A. § 1067), authority to restrict a registration only "as the rights of the parties hereunder may be established in the [cancellation] proceedings."

While respondent, in its Answer, asked for restriction in lieu of cancellation, it was requested only as "alternative relief." Thus, dismissal of the petition to cancel for failure of petitioner's proof, did not put in issue respondent's request for relief in the alternative. Therefore, the decision of the Trademark Trial and Appeal Board is reversed, insofar as it orders restriction of respondent's registration.

Modified.

MARTIN, Judge, did not sit or participate because of illness.

---

records. We do not regard this as a sufficient excuse for failing to produce evidence supporting the allegations necessary to proving petitioner's allegations. Such fires do not, for example, explain the failure to produce a copy of the recorded partnership certificate or copies

of the earlier newspaper advertisements which presumably would be available in the offices of the newspapers in which such advertisements appeared, or through libraries in which copies of such papers are deposited.