(No. 30223.—

CEDAR PARK CEMETERY ASSOCIATION, INC., Appellee, *vs.* THE VILLAGE OF CALUMET PARK, Appellant.

*Opinion filed November 20, 1947.*

GABEL & PAKULAZ, of Chicago, for appellant.

LEONARD L. COWAN, of Chicago, for appellee.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

This case is here on direct appeal from the circuit court of Cook County, the validity of a municipal ordinance being involved, and the trial judge having certified that in his opinion the public interest requires that the appeal be taken directly to the Supreme Court.

The defendant, the village of Calumet Park, was formerly the village of Burr Oak. Prior to May 18, 1923, one Daniel Hewitt desired to purchase land within the village for the purpose of constructing, operating and maintaining a cemetery and burial grounds thereon. There was no ordinance of said village at the time prohibiting the use of any premises for such purposes. Said Hewitt, however, desired the village to pass an ordinance granting him, his associates and assigns, or such corporation as he and his associates might organize for that purpose, authority to acquire, use and operate a cemetery and burial ground within the corporate limits of said village. The village passed an ordinance on May 18, 1923, granting such permission and authority to said parties "on ten (10) or more acres of land lying between 125th Street and 127th Street, adjacent to Racine Avenue" in said village.

On July 7, 1923, plaintiff was incorporated under the name of Cedar Park Cemetery Association, Inc., and, having acquired the interests of said Hewitt, it thereafter purchased for cemetery purposes the following real estate:

"The South thirteen and one-third acres of the northeast quarter of the southeast quarter and the north fifty-three and one-third acres of the south half of the southeast quarter of section twenty-nine, Township thirty-nine North, Range fourteen East of the Third Principal Meridian in Cook County, Illinois." These lands are located within the corporate limits of the village and adjoin the city of Chicago on the west, Halsted Street being the dividing line between the village and the city of Chicago. Following is a rough sketch of the premises:

The 53⅓ acre tract is bounded on the east by Halsted Street, on the south by the village limits, on the west by Racine Avenue, and on the north by the center line of 125th Street, as shown on the sketch, and the extension thereof east to Halsted Street. This tract includes the south half of 125th Street. The north half of that street is the only portion of the street shown on the sketch between Racine Avenue and Morgan Street.

The 13⅓ acre tract is bounded on the east by Halsted Street, on the south by the extension of the center line of

125th Street, as shown on the sketch, east to Halsted Street, on the west by Morgan Street and on the north by a line running east and west between Morgan Street and Halsted Street 440 feet north of said center line of 125th Street extended east to Halsted Street. The parties sometimes refer to the south boundary of this tract as "center line of 125th Street extended from the east." The extension is shown by broken line on the above sketch.

There is a 125th Street in Chicago and likewise a 125th Street in the village. From Racine Avenue to Morgan Street in the village the north half of 125th Street is 33 feet wide. The street has not been extended over the territory between Halsted Street and Morgan Street.

The cemetery association immediately after acquiring title to said premises laid out and constructed a cemetery on that portion of said 53⅓ acres abutting on Halsted Street on the east but did not lay out or construct a cemetery on that portion thereof adjacent to Racine Avenue on the west. The distance between Halsted Street and Racine Avenue is one-half mile.

Immediately after the first burial strong public opposition to the cemetery arose. The village then undertook to prevent further use of the premises as a cemetery, whereupon the association filed suit to enjoin the village from such interference and procured a temporary restraining order against the village. Thereafter, on August 15, 1923, the village passed two ordinances, one prohibiting the burial of dead bodies and the use of any premises in the village for cemetery purposes or within one mile of the same, and the other requiring the owner of any premises who theretofore had permitted the burial of any dead body thereon to remove the same within thirty days from the effective date of the ordinance.

A supplemental bill was then filed by the association to restrain the village from enforcing said two ordinances. An injunction restraining such enforcement was granted

and on interlocutory appeal both orders were affirmed by the Appellate Court. The case proceeded in the trial court on reference to the master, who recommended a permanent injunction restraining the village from interfering and from enforcing said ordinances of August 15, 1923, insofar as they related to the 53⅓ acre tract. Upon the hearing of exceptions to said report the court ordered the cause re-referred for a report relative to the said 13⅓-acre tract. After hearing additional testimony, the master indicated he would recommend that a permanent injunction be granted covering the latter tract also. No report was made by the master and no further decree entered. Thereafter on July 15, 1924, while the case was pending in the trial court, the cemetery association approached the village seeking an amicable settlement and proposed that if the village grant it the unrestricted privilege to establish, operate and maintain a cemetery on all of its lands south of 125th Street comprising the 53⅓-acre tract, it would subdivide the 13⅓ acre tract into lots by plat, plat 125th Street on the east to Halsted Street, and pay an annual tax on the 13⅓ acres in the sum of $250.00. While the village was considering this proposition, the association further proposed that it would forever waive all rights which it may have to construct and establish a cemetery on the said 13⅓ acres. These propositions were, on July 25, 1924, accepted by the village and pursuant thereto a resolution was passed on the same day which embodied the terms of the agreement, and the village at the same time passed an ordinance which was satisfactory to the association prohibiting the establishment of any cemetery within the said village except upon lands of the association south of 125th Street, if produced. The two ordinances of August 15, 1923, were repealed. In describing the lands owned by the association the resolution referred to the northern boundary as being "between 124th Street and 125th Street, if produced." The resolution, in pertinent parts, says:

"Whereas it is the desire of the village of Burr Oak and of the Cedar Park Cemetery Association, Inc. to settle and adjust all litigation now pending or which may hereafter arise, with reference to the rights of the Cedar Park Cemetery Association, Inc. to maintain and operate a cemetery within the corporate limits of the village of Burr Oak or within one mile thereof; and

"Whereas, it is the desire of the People of the Village of Burr Oak and its Board of Trustees that no cemetery be operated or maintained in the Village of Burr Oak north of 125th street, if produced; and

"Whereas, the Cedar Park Cemetery Association, Inc., has offered to waive its right to maintain and operate a cemetery in the lands now owned by it lying north of 125th Street, if produced, on condition that the Village of Burr Oak consent to the following: (a) The entry of a perpetual injunction in the Circuit Court of Cook County restraining the Village of Burr Oak, its officials, officers and employees from in any manner whatsoever interfering with the maintenance, conducting or operation of a cemetery on the lands now owned by the said Cedar Park Cemetery Association, Inc. in the Village of Burr Oak, lying between Halsted Street on the east, the Village Limits on the south, Racine Avenue on the west and 125th Street, if produced, on the north; (b) The waiver of any right to appeal or writ of error from the order granting a perpetual injunction restraining the Village of Burr Oak, its officers, servants and employees from in any manner whatsoever trespassing on the lands of the Cedar Park Cemetery Association, Inc. or from in any manner whatsoever interfering with the construction, maintenance and operation of a cemetery on any lands owned by the said Cedar Park Cemetery Association, Inc. which lie within the territory as follows: Halsted Street on the East, the Village Limits on the South, Racine Avenue on the West and 125th Street, if produced, on the North; (c) That the

President and Board of Trustees of the Village of Burr Oak enact an Ordinance repealing the said two Ordinances of August 15th, 1923; (d) That the President and Board of Trustees of the Village of Burr Oak pass an Ordinance satisfactory in form to the said Cedar Park Cemetery Association, Inc., making it lawful to maintain and operate a cemetery within the Limits of the Village of Burr Oak and within one mile thereof when such cemetery is or shall be located within the following described territory; Halsted Street on the East, Vermont Avenue or Blue Island Road on the South, Racine Avenue on the West and 125th Street, if produced, on the North; and

"Whereas, The right to maintain and operate a cemetery in the lands now owned by the Cedar Park Cemetery Association, Inc. lying north of 125th Street, if produced, is a valuable right and in the maintaining and operation of such cemetery the said Cedar Park Cemetery Association, Inc., will derive great profits and benefits; and

"Whereas, The President and Board of Trustees of the Village of Burr Oak are of the opinion that it is of importance and value to the people and Village of Burr Oak that no cemetery be maintained or operated in the Village of Burr Oak north of 125th Street, if produced; and

"Whereas, the President and Board of Trustees of the Village of Burr Oak deem it for the best interests of the People of the Village of Burr Oak to accept the proposition of the Cedar Park Cemetery Association, Inc., as outlined above,

"Now, Therefore, Be It Resolved: That the President and Board of Trustees of the Village of Burr Oak do hereby agree that a perpetual injunction, in accordance with the prayer of the original and supplemental bills of complaint filed by the Cedar Park Cemetery Association, Inc. in the Circuit Court of Cook County, in Case No. B-100623, and in accordance with the recommendation of the Master in Chancery in said cause, be entered restrain-

ing the Village of Burr Oak, its officers, servants and employees from in any manner whatsoever trespassing or interfering with the maintenance, conduct, improvement or operation of a cemetery upon the North fifty-three and one-third (53⅓) acres of the south half (S. ½) of the Southeast Quarter (S.E. ¼) of Section Twenty-nine (29), Township thirty-seven (37) North, Range fourteen (14), East of the Third Principal Meridian in Cook County, Illinois; and that the Village of Burr Oak does hereby, by its President and Board of Trustees, expressly waive any right of appeal or writ of error to the entry of said final injunction; it being the intention hereof that the Village of Burr Oak, through its President and Board of Trustees does hereby consent to and admit the right of the Cedar Park Cemetery Association, Inc., to construct, maintain and operate a cemetery on the (here follows description of the 53⅓ acre tract as lastly hereinabove described) and such other lands as the said Cedar Park Cemetery Association, Inc. may from time to time acquire lying south of 125th Street, west of Halsted Street, north of Vermont Avenue or Blue Island Road and east of Racine Avenue; and the said Village of Burr Oak, by its President and Board of Trustees, does hereby accept ·the agreement at this meeting submitted by the Cedar Park Cemetery Association, Inc. waiving its right to the maintenance and operation of a cemetery on the lands now owned by it lying north of 125th Street, if produced, in the Village of Burr Oak."

Following the passage of this resolution the court entered its decree October 4, 1924, making permanent the injunction as applied to the 53⅓ acre tract. The decree found that the said 13⅓ acre tract "lies immediately north of 125th Street, if produced."

The agreement, it will be observed, states that the parties desire "to settle and adjust all litigation now pending or which may hereafter arise, with reference to the rights

of the Cedar Park Cemetery Association, Inc. to maintain and operate a cemetery within the corporate limits of the village," etc. It will also be observed that the association offered to waive its right to maintain and operate a cemetery in the lands now owned by it lying north of 125th Street, if produced, on condition that the village consent to four things, (a) to the entry of a perpetual injunction restraining it from interfering with the operation of a cemetery on the 53⅓-acre tract; (b) waive its right to appeal or writ of error; (c) repeal the two ordinances of August 15, 1923; and (d) pass an ordinance making it lawful for the association to maintain and operate a cemetery south of 125th Street, if produced. The village agreed to the four conditions and complied with all of them. The association for more than 20 years thereafter did nothing to indicate that it had not intended to waive its right or claim of right to use the 13⅓-acre tract for cemetery purposes. It did erect some iron fences thereon but in general the tract grew up in weeds and was vacant.

Shortly before the filing of this suit on December 12, 1945, the association began preparation for use of said 13⅓ acre tract as a cemetery and indicated its purpose of establishing a cemetery thereon. The village interfered with such action and this suit followed. The cause having been referred to the master, he recommended that the village and all under it be restrained from interfering with the use of said tract as a cemetery. A decree in accordance with such recommendation was entered, and this appeal followed.

The village contends that the agreement expressed in the resolution adopted by it on July 25, 1924, settled once and for all that the association could use the grounds lying south of 125th Street and the extension thereof for cemetery purposes, but that it could not use the premises lying north of said line (the 13⅓-acre tract) at any time for such purposes. The association takes the position that the

agreement as evidenced by said resolution means that it waived the right to use said 13⅓-acre tract for cemetery purposes, provided the village within a reasonable time thereafter constructed the extension of 125th Street and only after and in case of the actual construction of said extension within such time. It says, in substance, that by the phrase "125th Street, if produced" there was imposed a condition to be fulfilled by the village by actually constructing the extension of said street, and that until such condition were performed, the association was not bound to refrain from using said tract for cemetery purposes. It also contends that since the extension of said street was not actually constructed and more than twenty years have elapsed since the agreement was made, the village cannot now rely upon the agreement; and that the ordinance of July 25, 1924, prohibiting a cemetery in the village except south of 125th Street is void as applied to it and to said 13⅓-acre tract.

Evidently the agreement was prepared and formulated by the association. Near the end of the resolution are the words "and the said village of Burr Oak, by its president and board of trustees, does hereby accept the agreement at this meeting submitted by the Cedar Park Cemetery Association," etc. No place in the record does the association deny that it submitted the agreement. An instrument is to be construed most strongly against its author. *Murray* v. *Kaskaskia Livestock Ins. Co.* 204 Ill. App. 568; *E. I. DuPont de Nemours & Co.* v. *Claiborne-Reno Co.* 64 Fed. 2d 224; 12 Am. Jur., Contracts, sec. 252, p. 795.

After the public became aroused over the cemetery the village authorities endeavored to prohibit the use of any lands within the village for cemetery purposes. The association having purchased the lands for such purpose, desired to use the whole to that end. The agreement finally reached was one which defined or fixed by description the portion to be used for cemetery purposes and the por-

tion not to be used for such purposes. Unless the phrase "125th Street, if produced" fixed a boundary line between the two portions, the description was faulty, there would be no boundary line between them, and the agreement would be meaningless.

The resolution provided that the village pass an ordinance making it lawful for the association to maintain and operate a cemetery "south of 125th Street, if produced." Would the association admit that under this provision it had no right to construct, operate and maintain a cemetery on its 53⅓-acre tract, unless and until the extension of 125th Street were actually laid out and constructed? The phrase "125th Street, if produced" means the same thing here as it means in that part of the resolution which provides that the village "accept the agreement at this meeting submitted by the Cedar Park Cemetery Association, Inc. waiving its right to the maintenance and operation of a cemetery on the lands now owned by it lying north of 125th Street, if produced," etc.

The association concedes that the phrase "125th Street, if produced" first used in the resolution (not shown in the quoted part above) was used in connection with the general location of the property. Unless a contrary intent is evident, words used in one sense in one part of a contract are deemed of like significance in another part. *Chicago Home for Girls* v. *Carr*, 300 Ill. 478, 13 C. J. 532, and cases therein cited.

The ordinance passed on the day the resolution was adopted described the north boundary of the lands on which the operation of a cemetery was permitted as "center line of one hundred twenty-fifth street extended .from the east." The association says that the word "extended" is used here instead of the words "if produced." Webster's New International Dictionary, Second Edition, unabridged, defines the verb "produce" to mean "to extend; to lengthen; to prolong; to draw out." It would seem, therefore, that

either word, "produced", or "extended," could have been used in the agreement alternatively to express the intention of the parties. It is common knowledge that engineers and others often describe a boundary by referring to some given line "if extended," or to a given line "and the extension thereof." The words "if extended" used in that connection mean "if presently extended" and not "if extended some time in the future" or "in case of such extension." Contracts must be construed and given effect with reference to the intention of the parties at the time of entering into them. *Espenschied* v. *Yeager*, 278 Ill. App. 508.

Both parties cite and rely upon many of the same cases. The intention of the parties controls and such intention may be gathered from all the facts and circumstances shown by the evidence. (*Adams* v. *Gordon*, 265 Ill. 87; *Geithman* v. *Eichler*, 265 Ill. 579; *Street* v. *Chicago Wharfing and Storage Co.* 157 Ill. 605.) In seeking to ascertain the intention regard will also be had to the practical construction, if any, which the parties by their acts have given the contract. (*Whalen* v. *Stephens*, 193 Ill. 121.) So, also, the acts of the parties themselves, indicative of their construction placed upon it, may be resorted to for the purpose of determining the true meaning of the written agreement. *Weger* v. *Robinson Nash Motor Co.* 340 Ill. 81.

The association owned the land through which 125th Street would be required to pass if extended. Had the actual construction of that extension been in the minds of the parties, it is strange nothing was said about a right of way for the same and the price, if any, to be paid therefor.

After a careful consideration of the entire record, we are unable to hold that the parties intended the actual construction of the extension of 125th Street before the association would be required to refrain from using the 13⅓-acre tract for cemetery purposes. We hold rather that the parties intended to and did by their agreement finally settle upon the portion of the premises owned by the association

within the village which could be used as a cemetery and the portion thereof which could not be so used; that the phrase "125th Street, if produced" used in the agreement was not intended to, nor did it, create or impose a condition calling for the extension of said street, but that it was used in fixing and establishing the boundary between the premises which were permitted to be used for cemetery purposes and those which were not permitted to be so used; that the ordinance, passed coincidentally with the resolution, which prohibited lands within the village from being used for cemetery purposes, except those lying south of 125th Street, is valid. This disposes of all points raised.

The decree of the circuit court of Cook County is therefore reversed and the cause remanded with directions to dismiss the complaint for want of equity.

*Reversed and remanded, with directions.*