Agnes **FAGAN**, Plaintiff-Appellee,

v.

James D. **COONEY** et al., etc., Defendants-Appellants.

No. 11555.

United States Court of Appeals Seventh Circuit.

July 26, 1956.

Rehearing Denied Sept. 5, 1956.

Schnackenberg, Circuit Judge, dissented.

Howard C. Parson, Thomas Freeman, Louis R. Simpson, Francis X. Reilly, Jr., Chicago, Ill., for defendants-appellants.

Frederic O. Floberg, Stephen A. Mitchell, Chicago, Ill., for plaintiff-appellee.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

After hearing this cause on stipulated facts and cross-motions for summary judgment, the district judge found, as a matter of law, that plaintiff was entitled to receive $204.64 per month for 120 months commencing August 1, 1953 under "The Wilson Employees' Retirement Plan" adopted January 1, 1949. Plaintiff initiated this declaratory judgment proceeding for the purpose of obtaining an interpretation of that Plan which her deceased husband's employer had set up for its employees.

Frank P. Fagan, husband of the beneficiary plaintiff, was a member of the Plan and on December 1, 1952 he attained normal retirement age. Prior to that date he agreed, at the request of his employer, to defer his retirement for a period of one year from and after his normal retirement date, as demonstrated by his letter dated May 26, 1952 to The Wilson Employees' Retirement Board.

From the various communications, in evidence as exhibits, it appears that the Secretary of the Plan erroneously advised Mr. Fagan concerning benefits [1] under option two. Subsequently plaintiff's husband filed his election of that option. While still actively employed by Wilson & Co., Inc., Mr. Fagan died July 27, 1953. If he retired on his "Normal Retirement Date," December 1, 1952, Mr. Fagan's (or his beneficiary's) benefits under that option would have been 120 monthly payments at $204.64 per month. The Retirement Board, of which defendants are members, administering the Plan decided that Mr. Fagan's death revoked his election of option two and consequently payments should be made to his widow on a no-option basis. Plaintiff rejected this basis and suit followed.

Two sections [2] in that Plan, which we examined in detail, barred plaintiff's recovery:

"Section 4, Benefits (1) Normal Retirement Allowance.

"(a) Subject to the condition that no Member shall retire prior to January 1, 1950 except with the consent of the Retirement Board, a Member

1. "According to the provisions of the Plan, if you wish to elect an option other than the normal retirement allowance it is necessary for you to do so prior to December 1, 1952. This is because your benefits in the Plan become vested as of that date. If you do not elect an optional form of payment, on and after the 31 day of December, 1953, you will receive monthly benefits for the remainder of your life with 60 monthly installments guaranteed to you or your beneficiary."

2. We say this because related sections are integrated with Section 4. Thus, subsections (3) (b) and (5) (b) provide:
   "(3) Payment of Retirement Allowances * * *
   "(b) If an optional benefit has not been elected and if the Member dies before 60 monthly installments of his Retirement Allowance have become payable, payments shall be continued to the beneficiary nominated by the Member by written designation filed with the Retirement Board if such beneficiary survives him, until a total of 60 monthly installments have been paid to him and the beneficiary. In the event of the death of the survivor

of the Member and the beneficiary before 60 monthly installments have become payable, the present value computed at Regular Interest of the remainder of the 60 monthly installments shall be paid in one sum to the executors or administrators of such survivor. If for any reason the payments made pursuant to this paragraph shall aggregate an amount less than the Accumulated Contributions of any Member at the time of his retirement, the amount of such deficiency shall be paid to the beneficiary of such Member or to the executors or administrators of the survivor of such Member and his beneficiary."
   "(5) Return of Contributions * * *
   "(b) Upon receipt of proof, satisfactory to the Retirement Board, of the death of a Member prior to his Normal Retirement Date, the amount of his Accumulated Contributions at the time of his death shall be paid in one sum to the beneficiary, if any, nominated by him by written designation filed with the Retirement Board if such beneficiary survives him, otherwise to the executors or administrators of such Member."

shall be retired on a Normal Retirement Allowance upon reaching his Normal Retirement Date. Upon the request of the Company, however, a Member may defer his retirement and be continued in service; provided that during any such extension the Member shall be retired on a Normal Retirement Allowance on the first day of the calendar month next following receipt by the Retirement Board of written application therefor made by the Member or by the Company, and provided that if the Member should die during any such extension, payment shall be made as provided in Subsection (3) (b) of this Section 4 as if he had retired immediately prior to death."

"Section 4(4) Optional Forms of Retirement Allowances  *  *  *

"If the Member or the beneficiary designated under the option dies prior to the Member's retirement, the election shall thereby be revoked, and the election of an optional benefit may be revoked or changed by the Member only by written notice received by the Retirement Board prior to his retirement."

Plaintiff's estoppel argument is too tenuous for discussion here. Nor do we think counsels' approving the order entered below amounted to a consent decree.

The judgment appealed is reversed and remanded with directions to enter judgment for defendants.

Reversed and remanded.

SCHNACKENBERG, Circuit Judge.

I am constrained to dissent.

The retirement plan was established by the employer. Section 6 provides that it is to be administered by a retirement board appointed by the employer's board of directors, to serve at the pleasure of the latter board. The plan also provides that the members of the retirement board shall elect a secretary. It is agreed that

Fagan wrote several letters to the retirement board, inquiring as to his rights under the plan, and, in reply, he received letters from the secretary, on behalf of that board.

A careful analysis of the plan, particularly subsections 4(1) (a), 4(3) (b) and 4(4) demonstrates that there are ambiguities in the language covering selection and revocation of options available to an employee pursuant to the plan. The plan is not clear as to the case of an employee who dies during a period of extended service and who, prior to his Normal Retirement Date,[1] had selected an option.

Subsection 4(1) (a) provides that "Upon the request of the Company [the employer]  *  *  *  a Member may defer his retirement and be continued in service," and further "that if the Member should die during any such extension, payment shall be made as provided in Subsection 3(b) of this Section 4 as if he had retired immediately prior to death." Subsection 3(b) provides

"If an optional benefit has *not* been elected and if the Member dies before 60 monthly installments of his Retirement Allowance have become payable, payments shall be *continued* to the beneficiary nominated by the Member by written designation filed with the Retirement Board if such beneficiary survives him, until a total of 60 monthly installments have been paid to him and the beneficiary. In the event of the death of the survivor of the Member and the beneficiary before 60 monthly installments have become payable, the present value computed at Regular Interest of the remainder of the 60 monthly installments shall be paid in one sum to the executors or administrators of such survivor." (Emphasis supplied.)

There is here a lurking ambiguity since the wording of subsection 3(b) indicates that it is applicable to employees who

---

1. Normal Retirement Date is defined by section 1(13) to mean "the first day of the month coincident with or next following the sixty-fifth anniversary of an Employee's birth."

have not chosen an option and are already receiving retirement allowance payments. Fagan, of course, had chosen an option and at the time of his death was not receiving any payments.

Subsection 4(4) provides that "Any member may, by written notice received by the Retirement Board prior to his *retirement*, elect to convert the benefits otherwise payable on his account into an optional benefit * * *." (Emphasis supplied.) It is not clear whether the word "retirement" refers to his Normal Retirement Date or to the date of his actual retirement.[2] Fagan's Normal Retirement Date was December 1, 1952.

Subsection 4(4) further states: "If a member or the beneficiary designated under the option dies prior to the Member's *retirement*, the election shall thereby be revoked * * *." (Emphasis supplied.) The same problem arises. Hence, if the word "retirement" in that part of subsection 4(4) first above set forth, means Normal Retirement Date, it is logical that the same word in the next sentence also means the same date. That a confusing ambiguity exists in this respect is further evidenced by the retirement board's letter of September 3, 1952 to Fagan in which the board said, in part:

"According to the provisions of the Plan, if you wish to elect an option other than the normal retirement allowance it is necessary for you to do so prior to December 1, 1952. This is because your benefits in the Plan become vested as of that date. If you do not elect an optional form of payment, on and after the 31 day of December, 1953, you will receive monthly benefits for the remainder of your life with 60 monthly installments guaranteed to you or your beneficiary."

Read together it is clear that the above subsections could logically be construed in the manner urged by plaintiff, i. e. that an employee who reaches his Normal Retirement Date after selecting an option is to have the benefit of that option even though he defers his actual retirement and dies during the period of extended service.

The ambiguities inherent in these provisions are such that this interpretation is both plausible and workable and is not inconsistent with the general purpose and intent of the plan. This is supported by the affidavit of Charles M. Mills, actuary and specialist in the field of retirement pension plans, which was offered in opposition to the motion for summary judgment below.

It is the law that an ambiguous document will be construed most strongly against its author and that any ambiguity therein should be resolved in favor of the opposing party. Counsel for both sides have cited Illinois cases in support of their positions, although the plan in subsection 12(1) clearly provides that it shall be "construed * * * under the laws of the State of New York." However, in this regard the laws of Illinois and New York are substantially the same. Rentways, Inc., v. O'Neill Milk & Cream Co., 308 N.Y. 342, 126 N.E.2d 271, 273; Gillet v. Bank of America, 160 N.Y. 549, 555, 55 N.E. 292, 293; Cedar Park Cemetery Ass'n v. Village of Calumet Park, 398 Ill. 324, 333, 75 N.E.2d 874, 879; Toffenetti v. Mellor, 323 Ill. 143, 149, 153 N.E. 744, 746, and 17 C.J.S., Contracts, § 324, p. 751.

Applying the rule of construction referred to above, I am of the opinion that the interpretation of the agreement which supports the judgment of the district court is justified. Incidentally, that interpretation is in accord with what the retirement board said to Fagan in its letter of September 3, 1952, supra, which was followed by Fagan's selection of Option 2.

I would affirm.

2. Actually Fagan, subsequent to receipt of a letter from the board dated September 3, 1952, did on November 18, 1952, give written notice to the retirement board of his election to convert the benefits otherwise payable on his account into an optional benefit (Option 2), which provides for not less than 120 monthly installments.