Joseph P. Coney and Jack A. Coney, Plaintiffs, Counter-Defendants and Appellees, v. Rockford Life Insurance Company, an Illinois Corporation, Defendant, Counter-Plaintiff and Appellant.

Gen. No. 65–48.

Third District.

February 8, 1966.

Miller, Westervelt & Johnson, of Peoria (Donald G. Beste, of counsel), and Williams, McCarthy & Kinley, of Rockford (John C. McCarthy, of counsel), for appellant.

Richard H. Radley, of Peoria, for appellees.

CORYN, P. J.

Joseph P. Coney and Jack A. Coney, as plaintiffs, filed a complaint in the Circuit Court to recover the sum of $1,050 allegedly due for rent under a written lease executed October 22, 1960. After the cause was assigned to the Magistrate's Division, the defendant-lessee, Rockford Life Insurance Company, filed an answer denying liability, and for a counterclaim, prayed a declaratory judgment (a) that under paragraphs 9 and 10 of the lease, the lessors are required to pay the costs of operating an air conditioner for the demised premises; (b) that defendant-lessees have paid the same over a certain period by mistake and inadvertence; (c) that defendant, as counterplaintiff, have judgment against plaintiff-counterdefendants in the amount of $1,987.58, which is the sum alleged to have been inadvertently paid; and (d) that it be ordered that plaintiffs are solely responsible for the expense of operating air conditioners for the future term of said lease, which does not expire until December 31, 1970.

The answer to the counterclaim denied that payments made by defendant-lessee for operating the air con-

ditioners were made by inadvertence, and asserted that such amounts were paid by mutual agreement under the express terms of the lease, and that defendant-lessee by having made said payments is estopped from now placing a different construction on the language of the lease.

After the case was at issue, plaintiff's cause for accrued rents was settled, and it was stipulated that the case would proceed for hearing upon the defendant's counterclaim. Thereafter, the cause was heard by the Magistrate, without a jury, and at the close of the evidence, judgment was entered in favor of the plaintiffs-counterdefendants and against the defendant-counterplaintiff. By this appeal, counterplaintiff complains that this judgment is contrary to the manifest weight of the evidence and to the law, and, alternatively, that other errors were made, including rulings on evidence, which require a remandment.

Paragraphs 9 and 10 of the lease in question provide as follows:

> "9. *Heating and Air Conditioning.* Lessors shall provide heating and air conditioning facilities adequate to maintain at all times in all parts of said premises such a reasonable degree of heat and coolness as each season may require for comfortable occupancy. Cost of heating and air conditioning shall be the expense of Lessors.

> "10. *Utilities.* Public utility service connections into said premises shall be provided by Lessors. Lessee shall pay charges for electricity. Lessors shall pay charges for the water."

■■■■ Contracts are said to be ambiguous where the words used by the parties are fairly susceptible of being understood in more than one sense. 12 ILP, Contracts, § 211. The issue of whether an ambiguity exists is a question of law. Bertlee Co., Inc. v. Illinois Pub. & Printing

Co., 320 Ill App 490, 52 NE2d 47. In the case at bar, at the second sentence of paragraph 9 of the lease, the word "conditioning" can be taken as a substantive, or gerund, to describe a process, or it may be regarded as a participle or verbal-adjective, modifying an understood reference to the word "facilities" in the first sentence of said paragraph, which is the only other clearly expressed substantive in the entire paragraph. On the one hand, the words may mean that "The cost of conditioning the air [i. e., the process of cooling] shall be the expense of Lessors." On the other hand, the words may easily be interpreted to mean that "The cost of air conditioning [facilities] shall be the expense of Lessors." The word "air" is, of course, actually used as a modifier, and not as the object of a verbal form. Moreover, in terms of unexpressed references, some argument might be made that the sentence should read to the effect that "The cost of air-conditioning [operations] shall be the expense of Lessors." Other meanings may be suggested by slight modifications in the arrangements of the words used, or by resort to other rules of grammar. It is plain in our judgment, therefore, that the meaning of the words used here is obscure, and that the contract is, therefore, ambiguous.

■■■■ In construing contracts, to determine their intent, it is long established law that a construction should be adopted, if possible, which ascribes meaning to every clause, phrase and word used; which requires nothing to be rejected as meaningless, or surplusage; which avoids the necessity of supplying any word or phrase that is not expressed; and which harmonizes all the various parts so that no provision is deemed conflicting with, or repugnant to, or neutralizing of any other. Herlihy Mid-Continent Co. v. Sanitary Dist. of Chicago, 390 Ill 160, 60 NE2d 882; Poorman v. Julian, 22 Ill App2d 208, 160 NE2d 169; see 12 ILP, Contracts, § 215. Contracts are generally construed against the

party who prepared them, for having chosen the words and grammar used, he is held responsible for the ambiguity. Cedar Park Cemetery Ass'n, Inc. v. Village of Calumet Park, 398 Ill 324, 75 NE2d 874. Where an ambiguity exists, competent extrinsic evidence is admissible to aid the court in reaching a proper interpretation. Martindell v. Lake Shore Nat. Bank, 15 Ill2d 272, 154 NE2d 683. Evidence showing the contemporaneous construction placed upon the contract by the parties themselves is entitled to great weight in finding the intention of the parties. Consolidated Trading Corp. v. Roth, 345 Ill App 151, 102 NE2d 551. Furthermore, where the evidence shows that one party to the contract understood the agreement in a particular sense, and the other party knew it to be so understood, the undertaking will be so defined if it is compatible with the language used. Hurd v. Illinois Bell Tel. Co., 136 F Supp 125, affd 234 F2d 942.

■■■■■■ The evidence relating to the circumstances attending the execution of the lease is not in substantial conflict. Lessee admits having prepared the lease by means of making extensive modifications to a form submitted by Lessors, which form Lessors had used for another tenant. Paragraph 9 on the original form submitted by lessors made no provision for air conditioning, and related solely to a division of the obligation for heat. The first sentence on the original form required lessors to furnish adequate facilities, while the second sentence stated that "Cost of *fuel* shall be the expense of Lessee." (Emphasis added.) Paragraph 9 of the present lease was made by lessee by adding a specific reference to air conditioning facilities in the first sentence and by striking the word "fuel" from the second sentence of the form to substitute the phrase "heating and air conditioning." Also, the word "Lessee" was changed to "Lessor" in said second sentence.

At the time the lease was being prepared, the premises to be leased were under construction, and lessors had furnished lessee with a copy of the specifications. These plans showed but one electrical meter to measure power furnished to the premises. Electrical air conditioning equipment was installed by lessors, pursuant to their obvious understanding of the agreement, and lessee thereafter took possession of the premises in May, 1961, although it had been paying rent since March, 1961. The fact that lessee now makes a claim for costs of operating the air conditioner for forty-four months since March, 1961, indicates lessee's recognition that the electrically powered air conditioner was installed, and apparently operating, when it took possession. Lessors appear to have made an engineering change in the facility when lessee complained of the air conditioner's inadequacy. Since lessee claims a credit for operating the air conditioner every month since March, 1961, it is plain that for seven months, that is, until October, 1961, when an exchange of correspondence indicated a disagreement about the lease, lessee paid for all electricity used to operate the air conditioning units. In October, 1961, lessee indicated to lessors that it believed this cost to be that of lessors, and lessors responded that such costs, by their understanding, were to be borne by lessee. Thereafter, lessee continued to pay such costs until 1964, when it set off against rents due the sum of $1,987.50, which it alleged to be the amount due from lessors for electricity in operating the air conditioners. Although there was never more than one electrical meter to the premises, lessee offered as evidence some estimates to the effect that the average monthly cost of electricity furnished to the premises during the months in question for purposes other than cooling was $27.70, although the electrical bills for all of these forty-four months, except one, were substantially in excess of that amount.

In our judgment, the foregoing evidence, considering the applicable rules of construction, amply sustains the determination of the Magistrate. The lease form submitted by lessors to lessee was an indication to lessee of the lessor's understanding as to a fair division of the responsibility for heating and cooling the air. Lessor submitted plans for the buildings showing one electrical meter, and even before lessee took possession, an electrically powered unit was in place. In drafting the provisions of paragraphs 9 and 10, the burden was upon lessee to explain in unambiguous terms that it intended an arrangement different from that which was obviously the understanding of the lessors. Notwithstanding this known difference in understanding, lessee continued without objection, for many months, to pay the electrical costs of operating the cooling unit to the comfort and needs of its staff. There is no exception stated in paragraph 10, or in any other part of the lease, to the lessee's obligation to pay for electricity, and words of exception should not be supplied by a court where that is not the unambiguous intent, and where to do so, would give rise to conflict. In the first sentence of paragraph 9, the term "air conditioning" was used as a modifier of the substantive "facilities." We conclude that the Magistrate did not err in holding that the second sentence should be read to mean that the "Cost of air conditioning facilities shall be the expense of Lessors."

We have considered the other issues raised by Lessee on this appeal, but in view of our foregoing determination, we conclude that no occasion is presented for review of these issues, except as to a ruling excluding counterplaintiff's exhibit 7 from evidence. This exhibit is a letter to lessors from attorneys for lessee under date of November 1, 1961, explaining lessee's understanding of the meaning of the lease, and contains the same information as set out in counterplaintiff's exhibit 8, which was admitted to evidence, is cumulative

and self-serving, and therefore was properly excluded from evidence.

There being no error in the record, the judgment of the Circuit Court is affirmed.

Affirmed.

ALLOY and STOUDER, JJ., concur.