8 Ill. App.3d 215 (1972)
289 N.E.2d 699
GENERAL CASUALTY COMPANY OF WISCONSIN, Plaintiff-Appellant,
v.
BETTY J. ELAM et al., Defendants-Appellees.
No. 71-66.
Illinois Appellate Court  Fifth District.
October 25, 1972.
*216 *217 August L. Fowler, of Fowler & Novick, of Marion, for appellant.
Craig & Craig, of Mt. Vernon, for appellee Auto Club Inter-Ins. Exchange.
Hanagan, Dousman & Giamanco, of Mt. Vernon, for appellees Mary Bushing and Pauline Carnago.
Joseph W. Hickman, of Benton, for appellees Betty J. Elam and Arlie A. Elam.
Judgment affirmed.
Mr. JUSTICE EBERSPACHER delivered the opinion of the court:
This is an appeal from a declaratory judgment by the court in a non-jury trial that an automobile policy issued by plaintiff, General Casualty Co., to Betty Elam, wife of Arlie Elam, which specifically described a 1963 Ford automobile, also covered a 1959 Chevrolet owned and operated by Arlie Elam. The plaintiff had sought a judgment declaring which of two automobile insurance policies were available to pay for injuries sustained by Mary Bushing and Pauline Carnago, when their automobile, insured by Automobile Club Inter-insurance Exchange, collided with the 1959 Chevrolet driven by Arlie Elam.
The pertinent facts are as follows: Betty Elam applied for an insurance policy to insure a 1963 Ford on March 17, 1969, from plaintiff's agent. According to the insurance agent's testimony, Mrs. Elam stated that her husband then owned a 1959 Chevrolet, that it was covered with insurance by another insurance company, and that as soon as this policy on the 1959 Chevrolet expired, she would request coverage from plaintiff's insurance agent. Mrs. Elam testified that she told the agent that she did not think the 1959 Chevrolet was running, that her husband would insure it when he got home and got it running. The application which she signed contained the statement "Husband has own auto 1959 Chev.  will add to this later". A policy was later issued, effective March 17, 1969, providing coverage of a "63 Ford", but the company did not attach or make the application a part of the policy. No reference was made in the policy about the 1959 Chevrolet. The policy further defined "owned vehicle" to include "a private passenger * * * automobile ownership of which is acquired by the named insured during the policy period then current * * *".
On March 14, 1969, Arlie Elam had entered the veterans hospital. A few days prior to that he had a conversation with his half brother, Riley *218 Roach, concerning the purchase of the 1959 Chevrolet. He and Roach had agreed upon a price which was $50 in cash and credit for an indebtedness of Roach to Elam in the amount of $35. Elam did not take possession of the automobile prior to the time that he went into the hospital, nor had he paid Roach $50. It was not until Elam got out of the hospital on March 28, 1969, that he paid Roach the $50. He then took possession of the 1959 Chevrolet on March 29, 1969, the same day of the accident with Mary Bushing.
Betty Elam testified that at the time she applied for insurance, the 1959 Chevrolet was at her husband's mother's house. After she had applied for the insurance, she visited her husband at the hospital. She said that it was at this time that she learned that her husband did not in fact own the 1959 Chevrolet.
The issues are whether the trial court was correct in deciding that Arlie Elam acquired ownership of the 1959 Chevrolet after the effective date of plaintiff's policy to Betty Elam and in deciding that the policy should not be construed to incorporate the statement of Betty Elam in the application that the 1959 Chevrolet should not be included within the coverage of the policy.
The only evidence which plaintiff submitted to rebut the evidence that Arlie Elam acquired ownership after the effective date of the policy is a statement in a discovery deposition by Arlie Elam that he considered the automobile to be his when he went into the hospital; a signed statement taken by plaintiff's insurance adjuster from Riley Roach indicating that Roach believed the car belonged to Elam before Elam entered the hospital; and the testimony of Mrs. Elam to the effect that she thought Arlie Elam owned the car before he entered the hospital.
However, Arlie Elam testified on trial that when he gave Roach the $50 he expected the '59 Chevrolet was his car and that was the first time that he considered that he was the owner of the car. Although there is a conflict between plaintiff's discovery deposition and Elam's subsequent testimony, the trial judge, after weighing this conflict believed the testimony at trial.
Second, plaintiff's signed statement from Riley Roach is of questionable value since it was established on trial that Roach can neither read nor write except to sign his signature. The trial judge noted this fact and elected to minimize the effect of this evidence.
Finally, Mrs. Elam's testimony that she thought her husband owned the '59 Chevrolet was explained by her testimony that her husband talked like he was going to purchase it and she thought he had already purchased it for a while. Further testimony on her part revealed that she did not learn that he had not actually purchased it until she visited her *219 husband at the hospital and he asked her to get the money from her brother to pay for the '59 Chevrolet.
 1 Thus, it is evident that none of this evidence, without more, can require a decision contrary to the one made by the trial judge. As in other cases raising factual questions, we adhere to the principle expressed in (Brown v. Zimmerman (1960), 18 Ill.2d 94, 102, 163 N.E.2d 518, 523, wherein the court stated:
"Where the trial court has seen and heard the witnesses and the testimony is contradictory, this court will not substitute its judgment as to the credibility of witnesses for that of the trial court, and will not disturb the findings unless they are manifestly against the weight of this evidence."
 2, 3 The plaintiff argues that this principle is inapplicable since the trial court stated in its decision: "I realize it is a close case, but if there is any question here, we will let the Appellate Court decide it." The plaintiff argues that this statement indicates the trial court "passed it on to this Appellate Court for a decision." We disagree. The trial court heard the evidence, saw the witnesses, and, though recognizing that it was a close case, found for the defendants. We will not disturb his finding unless manifestly against the weight of the evidence. The trial court concluded that the 1959 Chevrolet was acquired after the effective date of the policy. There is sufficient evidence in the record to support this conclusion.
Plaintiff next argues that, even assuming ownership of the 1959 Chevrolet was acquired after the effective date of the policy, the policy should be interpreted in such a way as to exclude the 1959 Chevrolet. Plaintiff argues that the clause in the policy concerning after acquired automobiles is latently ambiguous because it was the clear intention of the parties not to include the 1959 Chevrolet within the coverage of the policy.
Both at the time the application was offered and at the time the plaintiff's agent was questioned about taking the application from Betty Elam, counsel for defendants objected, on the theory that the evidence was being offered to vary the terms of the written insurance contract. However, the trial court permitted introduction of the evidence on the theory that plaintiff was not "proposing to make a change, he is proposing to show the interpretation at the time of the inception of the contract".
 4 Appellant, in his reply brief, cites Queens Insurance Co. of America v. Meyer Milling Co. (8th Cir.1930), 43 F.2d 885, to illustrate the latent ambiguity doctrine. In particular, appellant draws our attention to the language on page 887 of this case wherein it is stated:
"To discover latent ambiguity it is, of course, necessary * * * to go outside the instrument and to consider evidence * * * to *220 reveal the facts which existed when the words of the instrument were used, so that by comparing the words with the facts it may be ascertained whether the words aptly fit the facts. 2 Corpus Juris 1314. If they do not, there is latent ambiguity. When that has been ascertained, extrinsic proof as to the real intent is competent * * *.
* * * We illustrate the foregoing general observation thus: A enters into a written contract with B by which he agrees to sell and B agrees to buy A's house for $5,000. There is no patent ambiguity in that contract. But the fact is, A has two houses. Proof of that fact shows a latent ambiguity in the written contract. It is then competent to prove by extrinsic evidence what house was really intended by A and B as the subject matter of the written contract."
Thus, for the latent ambiguity doctrine to be applicable, the words or the term in question must initially be susceptible of more than one possible meaning or description. Consequently, the language used in the written contract must be ambiguous before extrinsic proof of real intent is competent. Coney v. Rockford Life Insurance Company (1966), 67 Ill. App.2d 395, 214 N.E.2d 1, at 3, clearly substantiates this point:
"Contracts are said to be ambiguous where the words used by the parties are fairly susceptible of being understood in more than one sense. 12 I.L.P., Contracts sec. 211."
There is no way that the clause in the policy providing for automatic coverage for newly acquired automobiles can be construed any differently that what the words themselves express. Appellant agrees that the instant policy provided automatic coverage for newly acquired automobiles; that the parties intended such coverage; and that they clearly expressed this intention. Therefore, it is not only evident that the words in the policy clearly indicate the parties intention, but also that the same words aptly fit the facts described above.
Notwithstanding this seemingly incontrovertible proof, appellant urges us to consider a definition of latent ambiguity taken from 2 C.J.S., Ambiguity, page 1035:
"A latent ambiguity implies `a clear expression of the parties intention, and the existence of a doubt not as to the intention but as to the object to which the intention applies and * * * the necessity of extrinsic evidence to identify the object.'"
It is appellant's contention that the parties agreed that the 1959 Chevrolet was a presently owned automobile, and that inherent in that agreement was a further agreement that it did not and could not be a newly acquired automobile under the automatic coverage offered in the policy. With this in mind, appellant concludes that as a result there exists a *221 doubt as to the object to which the intention of the parties applies. Thus, according to the appellant, there exists a latent ambiguity.
 5-8 However, for there to be latent ambiguity, the language in the written contract itself must be susceptible of different interpretations as to the object to which the intention applies. Only then can there be the existence of a doubt as to the object to which the intention applies. Since the parties intended coverage for newly acquired automobiles, and since the language in the policy clearly indicates this intent, there obviously is no existing doubt as to the object to which this intention applies. Even if there were an intent to exclude the 1959 Chevrolet from automatic coverage under this clause, this does not create a latent ambiguity in the instant case because the language used in the policy does not lend itself in any way to this conclusion. The recent case of Olipra v. Zambelli (1971), 1 Ill. App.3d 607 at 609-610, and 274 N.E.2d 877, at 879, appropriately distinguishes this point:
"The primary object in the construction of an insurance policy is to ascertain the intention of the parties as expressed in the language of the contract. Nationwide Insurance v. Erven, 87 Ill. App.2d 432, 231 N.E.2d 112; Brown v. Farmers Automobile Insurance Association, 106 Ill. App.2d 360, 245 N.E.2d 260. If the words of the policy are clear and unambiguous the court without consideration of extrinsic matters to the contract should give effect to the plain and obvious import of the language used unless such construction would lead to unreasonable or absurd consequences. Mid-Central Mutual Casualty Company v. Spanjer, 101 Ill. App.2d 468, 243 N.E.2d 452; Allstate Insurance Company v. Conglis, 33 Ill. App.2d 370, 179 N.E.2d 434."
This court concurs with this reasoning. The language in the instant policy is clear and unambiguous. The effect of the language used does not lead to an unreasonable consequence. The parties intended automatic coverage for newly acquired automobiles. Thus the actual intention of the contracting parties is clear and sufficiently expressed in the language of the contract. There is no reason to consider extrinsic evidence to contravene the plain import of the language used in the contract. For these reasons it is apparent that there is no latent ambiguity.
Further, it would appear that appellant is estopped from denying liability due to the provisions of the policy itself. The policy provides on the declarations page: "This declaration replaces all prior declarations as of the effective date shown at left." Paragraph 14 of the conditions section provides:
"Notice to any agent or knowledge possessed by any agent or by any other person shall not affect a waiver or a change in any part *222 of this policy or estop the company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed except by endorsement issued to form a part of this policy, signed by a duly authorized representative of the company."
The written instrument speaks for itself. Moreover, appellant, had it desired, could easily have attached an endorsement to the policy specifically excluding the 1959 Chevrolet.
The next issue which appellant urges this court to consider is that oral testimony is admissible to contradict or vary the terms of a written contract because the rule excluding parol evidence has no application to a controversy to which at least one of the parties is a stranger to the instrument, whether the controversy is wholly between strangers or third parties, or is between strangers and a party to the instrument. Thus, appellant contends that what happened at the inception of this insurance policy may be shown, to demonstrate that coverage of the 1959 Chevrolet was deliberately rejected by the two parties to the insurance contract. The result of this would make the 1959 Chevrolet an uninsured automobile, and Elam an uninsured motorist. This would make applicable the uninsured motorists coverage of the policy issued by appellee.
Appellant argues that since it and Betty S. Elam were the only parties to the insurance contract, and that since this is in essence a controversy between the respective insurance companies as to which coverage applies, then the rule excluding parol evidence is not applicable because appellee, Automobile Club Inter-Exchange, was a stranger to the instrument in question.
In support of its contention, appellant cites McKee v. Gaulrapp (1937), 367 Ill. 321, 11 N.E.2d 380; Komorowski v. Boston Store of Chicago (1931), 263 Ill. App. 88; and Reams v. Janoski (1932), 268 Ill. App. 8. In McKee v. Gaulrapp, supra, the issue was whether one of the makers of a note might prove by parol, that he was, in fact, a surety. One of the provisions in the note was that "all signers to this note are principals". Appellants contended that this provision could not be contradicted by parol evidence. But the Court, on page 325, held that "As long ago as 1863 it was held in the case of Ward v. Stout, 32 Ill. 399, that one of the makers of a note might prove by parol, that he was, in fact, a surety."
Komorowski v. Boston Store of Chicago, supra, among other things, involved the question whether a third person, not a party to a contract, can put in evidence tending to show the construction which the parties themselves have placed upon the contract. In brief, plaintiff brought an action to recover damages for an alleged false arrest and imprisonment due to an incident occurring in defendant's store. Defendant introduced *223 a contract which established that one, Sullivan, (who was the one making the false arrest) was not an employee of defendants, but rather an employee of McGuire & White Detective Agency whom defendant contracted with for the purpose of protecting its store from shoplifters, thieves and other offenders. Hence, it was defendant's purpose to show by reason of this contract, and in the absence of other circumstances, that it could not be called upon to respond to damages under the doctrine of respondeat superior. The court held that plaintiff, not a party to this contract, could offer extrinsic evidence to show that the relations of the parties were different from those evidenced by a written contract.
In Reams v. Janoski, supra, the administratix of the estate of Helen Reams, instituted the suit to recover damages from defendant for negligently causing the death of plaintiff's intestate. The deceased was a passenger in an automobile driven by defendant which collided with another automobile operated by one William Muntz. Deceased was killed as a result of this collision. Defendant averred that the negligence, if any, of the defendant was joined by the negligence of William Muntz, and that since the plaintiff executed a written release discharging the said William B. Muntz from all liability arising from his negligence, then the defendant was released from liability by force of the rule that a release of one joint tort-feasor releases both. Plaintiff was permitted to introduce parol testimony to the effect that it was not the intention of the plaintiff or of the said William B. Muntz to release the latter but to enter into a covenant not to sue the said William B. Muntz. Thus, the question presented was whether the plaintiff, having executed a writing which purports to release a joint-feasor, may by parol evidence show that the writing was intended by the parties to it to have been a covenant not to sue. The Court affirmed, holding, at 17, that:
"The rule of law which permits a party to a suit against a stranger to the contract involved to introduce parol evidence to vary the terms of a written contract entered into with another seems to have been recognized by the courts of this State. Since the defendant was not a party to this contract that is set up on his plea, we are of the opinion that the replication filed by the plaintiff was sufficient to permit her to offer evidence in support of her contention."
It is evident that none of these cases cited by the plaintiff involve an interpretation of an insurance contract as is the situation in the present litigation. Notwithstanding this fact, these cases do support the principle promulgated by appellant that the parol evidence rule is inapplicable to controversies involving the interpretation of a contract where at least one of the parties is a stranger to the instrument. This exception to the *224 parol evidence rule has received very little attention within this jurisdiction in regard to applying it to the interpretation of an insurance contract between a party and a stranger to the instrument. In Northern Assurance Co. v. Chicago Mutual Bldg. Assn. (1902), 98 Ill. App. 152, affd. 198 Ill. 474, 64 N.E. 979, the Supreme Court held that parol testimony is inadmissible to contradict or vary a written instrument only if said testimony is introduced by the parties to the instrument or their privies. The controversy involved a fire insurance policy which provided that any loss by fire on the insured premises was made payable to the mortgagee. Another clause in the policy stipulated that any unauthorized change in title to the property should vitiate the policy. In an action on the policy by the mortgagee, the insurance company, having shown two transfers of the property by quitclaim deeds, the mortgagee showed by parol that the first was made in trust to its secretary in pursuance of an agreement to avoid foreclosure and to further secure the mortgagee. The second was from the secretary to his successor. The Court held that it was competent for the appellee association to show the deed was not absolute, but a conditional conveyance. In its dictum, the Court did make clear, however, that even if the appellee association could be regarded as privy to each of the deeds, nevertheless, the deeds were introduced by one not a party to them. But it is doubtful whether the Court meant to imply that, while persons not a party to a contract can introduce parol testimony to contradict the terms of that contract, the parties to the contract itself are precluded by the same parol evidence rule in a controversy involving strangers to the contract.
 9, 10 Unfortunately, clarification of this point has had to be found from an analysis of cases not concerned with the interpretation of an insurance contract because no case directly in point has been discovered within this jurisdiction. Consequently, the correct interpretation appears to be that "In a suit between a party and a stranger, neither is concluded by the contract, but either may give evidence differing from it". (Reams v. Janoski (1932), 268 Ill. App. 8 at 12, citing O'Shea v. New York C. & St. L.R. Co., 105 Fed. 559.) The parol evidence rule "applies only in the construction of instruments in actions between the parties to the instrument." Essington v. Parish (7th Cir.1947), 174 F.2d 725, 729, citing Reams v. Janoski, supra.
In Stevens v. Ryder (1970), 129 Ill. App.2d 109, 262 N.E.2d 761, the Court held that it was proper to consider evidence of intention of the parties to a document where the controversy concerning the document was not between the parties to the document. This case involved an action by the plaintiff for injuries sustained when the taxicab into which he had leaned his head and shoulders was struck in the rear by another *225 automobile. Plaintiff subsequently executed a document entitled "Release (Satisfaction) of Judgment" to the driver of the automobile that struck the cab. Parol testimony was held to be admissible to determine the intention of the plaintiff and driver of the automobile since the driver and owner of the cab were not parties to the document. See also Zenith Radio Corp. v. Hazeltine Research (1970), 401 U.S. 321, 28 L.Ed. 77, 91 S.Ct. 795.
Carolina Casualty Insurance Company v. Oregon Automobile Insurance Company (1965), 242 Oregon 407, 408 P.2d 198, at 201, presents the clearest explanation of this issue:
"The parol evidence rule * * * prevents the parties to an integrated written contract from varying or contradicting the terms of the contract when litigating between themselves concerning their rights thereunder. However, parol evidence can be used to vary or contradict a contract when the litigation is between a party to the contract and a stranger thereto * * *. This is true even where the evidence is offered by the party to the contract."
Other cases favoring this interpretation include: Cranford v. McNiece (1969), 252 Oregon 446, 450 P.2d 529; Worchester Felt Pad Corp. v. Tucson Airport Authority (9th Cir.1965), 233 F.2d 44; Shelby County v. Baker (1963), 110 So.2d 896; Kassianov v. Raisses (1962), 19 Cal. Rptr. 614.
 11, 12 While there are few decisions in Illinois on this point, the principle seems established that parol evidence is admissible to contradict or vary the terms of a written contract where one of the parties is a stranger to the instrument, even if the controversy is between strangers and parties to the instrument.
Accordingly, the trial court was required to determine whether Mrs. Elam's statements and the language on the application with regard to the 1959 Chevrolet were sufficient to indicate an intent contrary to that contained in the written contract. This question was argued before the trial court and he concluded that the 1959 Chevrolet was covered by the after-acquired automobile clause. The trial court had to weigh the evidence that the insurance company did not include the application as a part of the insurance contract and did not change the language of paragraph 14 of the conditions section providing that the terms of the policy could not be changed except by endorsement, with the contrary evidence that Mrs. Elam thought her husband's car was not running and she did not want to include it at the time of the application, but that her husband would insure it when he got home from the hospital.
 13, 14 Even though the manifest weight test has not been held appropriate as a standard of review where the credible evidence on a material *226 issue is equally divided between oral and written testimony, the trial court's resolution of a factual dispute should not be disturbed if there is substantial evidence to support it. (Inter-Insurance Exchange v. Travelers Indemnity Co. (1965), 57 Ill. App.2d 17, 206 N.E.2d 518.) On reviewing the evidence in this case, we find sufficient evidence to support the conclusion of the trial court that the intention of the parties to the insurance contract was not to exclude the 1959 Chevrolet subsequently acquired by Mr. Elam.
Accordingly, the decision of the trial court is affirmed.
G. MORAN and JONES, JJ., concur.